COURT OF APPEALS

                                       SECOND DISTRICT OF TEXAS

                                                   FORT WORTH

 

 

                                        NO.
2-09-129-CR

 

 

VICKI LARGENT MINZE A/K/A
                                              APPELLANT

VICKI HACKNEY MINZE A/K/A 

VICKI HACKNEY LARGENT A/K/A 

VICKI HACKNEY

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

             FROM
THE 43RD DISTRICT COURT OF PARKER COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

In three
points, appellant Vicky Largent Minze a/k/a Vicki Hackney Minze a/k/a Vicki
Hackney Largent a/k/a Vicki Hackney (hereinafter AMinze@)
appeals her second-degree felony conviction for possessing between four and two
hundred grams of methamphetamine.[2]  We affirm.








Background Facts

At
around two o=clock one morning in January
2007, Kathleen Pierce, an employee at Wal-Mart in Azle, was in the store=s
lingerie department when she saw Minze, who was Aacting
really paranoid.@ 
Minze was wearing a short skirt and a low-cut shirt, and she was riding
in an electric scooter.  Minze stood up
from the scooter to reach a rack of clothes, and when she did so, something
fell to the ground.  While maintaining
eye contact with Minze (who did not notice that the item had dropped to the
ground), Pierce went to a spill station pole and grabbed an absorbent pad.[3]  After Minze left the immediate area, Pierce
picked up the item, which looked to Pierce like a rubber glove Awith
white stuff all over it.@ 








Pierce
called her manager, Tanika Jordan. 
Jordan looked at the item, took it to the front of the store, and called
the Azle police department.  Corporal
Michael Winterrowd took the item, noticed that it contained Aa
visible amount of light colored crystals,@ and put
it in his pocket.  Jordan and Pierce then
directed another Azle police officer, David Poe, to Minze, who began screaming
and cursing.  The officers gave Minze a
disorderly conduct citation and a criminal trespass warning, and they escorted
her away from the store.  They took a
statement from Pierce, but they did not immediately arrest Minze.

At the
police station later that morning, the contents of the item tested positive for
a controlled substance.  Several months
later, the police sent the item to a lab for testing, and a chemist confirmed
that the item contained 6.58 grams of methamphetamine.

In
January 2008, a Parker County grand jury indicted Minze for possessing
methamphetamine.  At trial, Minze pled
not guilty, but the jury found her guilty. 
After the trial court heard evidence about Minze=s
criminal history and listened to testimony from Minze=s
mother, it sentenced Minze to fifteen years=
confinement.  Minze filed her notice of
this appeal.

Legal Sufficiency








In her
first point, Minze contends that the evidence is legally insufficient to
support her conviction.  In reviewing the
legal sufficiency of the evidence to support a conviction, we view all of the
evidence in the light most favorable to the prosecution in order to determine
whether any rational trier of fact could have found the essential elements of
the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
319, 99 S. Ct. 2781, 2789 (1979); Clayton v. State, 235 S.W.3d 772, 778
(Tex. Crim. App. 2007).  This standard
gives full play to the responsibility of the trier of fact to resolve conflicts
in the testimony, to weigh the evidence, and to draw reasonable inferences from
basic facts to ultimate facts.  Jackson,
443 U.S. at 319, 99 S. Ct. at 2789; Clayton, 235 S.W.3d at 778.

The
trier of fact is the sole judge of the weight and credibility of the
evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979); Brown v. State, 270 S.W.3d
564, 568 (Tex. Crim. App. 2008), cert. denied, 129 S. Ct. 2075
(2009).  Thus, when performing a legal
sufficiency review, we may not re-evaluate the weight and credibility of the
evidence and substitute our judgment for that of the factfinder.  Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000).  Instead, we Adetermine
whether the necessary inferences are reasonable based upon the combined and
cumulative force of all the evidence when viewed in the light most favorable to
the verdict.@ 
Hooper v. State, 214 S.W.3d 9, 16B17 (Tex.
Crim. App. 2007).  We must presume that
the factfinder resolved any conflicting inferences in favor of the prosecution
and defer to that resolution. Jackson, 443 U.S. at 326, 99 S. Ct. at
2793; Clayton, 235 S.W.3d at 778.








Minze
first asserts that the evidence is insufficient to sustain her conviction
because (1) neither Pierce nor Jordan identified the State=s
exhibit that contained methamphetamine as the same item that Pierce saw drop
from Minze and (2) Pierce=s and Jordan=s
description of the item differed from Corporal Winterrowd=s
description.  She therefore argues that
the trial court erred on relevancy grounds by admitting the methamphetamine
exhibit because the State did not show a sufficient nexus between her and the
drugs.

Evidence
is relevant if it has any tendency to make the existence of any consequential
fact more or less probable than it would be without the evidence. Tex. R. Evid.
401; Guy v. State, 160 S.W.3d 606, 615 (Tex. App.CFort
Worth 2005, pet. ref=d).  AA trial
court=s
determination of relevancy is not disturbed absent an abuse of discretion.@  Guy, 160 S.W.3d at 615; Marc v.
State, 166 S.W.3d 767, 774 (Tex. App.CFort
Worth 2005, pet. ref=d) (AAs long
as the trial court=s ruling admitting the evidence
was within the >zone of reasonable disagreement,= there
is no abuse of discretion and the trial court=s ruling
will be upheld.@).








The
State presented evidence that an item fell from Minze and establishedCthrough
uncontroverted evidenceCthe item=s
unbroken chain of custody from Pierce, who first saw the item, to Jordan, and
then to Corporal Winterrowd.  Corporal
Winterrowd testified, A[Jordan] provided me with a bag
that her employee had seen dropped onto the floor.  I handled it with surgical gloves and seized
it as evidence.@ 
Corporal Winterrowd then identified the item in court as the same one
given to him at Wal-Mart; when the State questioned him about the
methamphetamine exhibit, he said, AThat was
the bag provided to me by the store employee that said [she] found it on the
floor.@








Thus,
although neither Pierce nor Jordan specifically identified the State=s
methamphetamine exhibit as the same item that they handled on the night of
Minze=s offense,
the evidence nonetheless established that the item admitted at trial is the
same as the item found by Pierce.  Also,
although Pierce=s description of the item
containing methamphetamine differs somewhat from Corporal Winterrowd=s
description (Pierce described the item as looking like a twisted rubber glove
and Corporal Winterrowd described it as looking like plastic bags), we must
defer to the jury=s resolution of conflicting
testimony in the prosecution=s favor
in our legal sufficiency review.  See
Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Clayton, 235 S.W.3d at
778.  Thus, we hold that the trial court
did not err by admitting the methamphetamine exhibit.[4]  See Jones v. State, 617 S.W.2d 704,
705 (Tex. Crim. App. [Panel Op.] 1981) (holding that an item that is offered
into evidence should not be rejected merely because it is not positively
identified at trial by every person in the item=s chain
of custody); Salinas v. State, 507 S.W.2d 730, 731 (Tex. Crim. App.
1974) (holding similarly).

Next,
Minze argues that the State did not prove that she controlled the item that
contained methamphetamine.  In other
words, she contends that the State failed to prove her affirmative links to the
methamphetamine. 

As the
court of criminal appeals has stated,

To prove unlawful possession of a controlled substance, the State must
prove that:  (1) the accused exercised
control, management, or care over the substance; and (2) the accused knew the
matter possessed was contraband.  Whether
this evidence is direct or circumstantial, Ait must establish, to the requisite level of
confidence, that the accused=s connection with the drug was more than just
fortuitous.  This is the whole of the so‑called
>affirmative links= rule.@

 








Poindexter v. State, 153
S.W.3d 402, 405B06 (Tex. Crim. App. 2005)
(footnotes omitted); see Tex. Health & Safety Code Ann. ' 481.002(38)
(Vernon Supp. 2009); Tex. Penal Code Ann. ' 6.01(b)
(Vernon 2003); Beall v. State, 237 S.W.3d 841, 849 (Tex. App.CFort
Worth 2007, no pet.); Tucker v. State, 183 S.W.3d 501, 510 (Tex. App.CFort
Worth 2005, no pet.).  In other words,
when Athe
accused is not in exclusive possession of the place where the substance is
found, it cannot be concluded that the accused had knowledge of and control
over the contraband unless there are additional independent facts and
circumstances which affirmatively link the accused to the contraband.@  Poindexter, 153 S.W.3d at 406 (emphasis
added) (quoting Deshong v. State, 625 S.W.2d 327, 329 (Tex. Crim. App.
[Panel Op.] 1981)). Thus, the Aaffirmative
links@ test
does not apply when the evidence shows that the defendant had exclusive
possession of the contraband.  Ramirez
v. State, 897 S.W.2d 428, 436 (Tex. App.CEl Paso
1995, no pet.); see Poindexter, 153 S.W.3d at 407 (A[T]he
parties agree . . . that appellant was linked to the Van Loan house where the
contraband was found, but that he did not have exclusive possession of it. . .
.  Thus, we look for additional facts and
circumstances which affirmatively link appellant to the drugs.@).








Here, the
evidence establishes Minze=s
exclusive control of the methamphetamine before it was found by Pierce.  Pierce, who was only eight to ten feet
away from Minze when the drugs dropped, testified that she had no doubt that
they dropped from Minze.[5]  Pierce explained that the drugs could not
have been on the store=s floor before Minze dropped
them because the store=s maintenance crew had
previously swept the area in which the drugs dropped and because Pierce had
been working in the area and would have noticed them. There were no people
other than Minze and Pierce in the area where the drugs were found at the time
that they were found, and the record does not contain evidence that could
indicate that the drugs appeared on the store=s floor
in any way other than Minze=s
dropping them there.  We therefore hold
that the uncontradicted evidence presented at trial is legally sufficient to
prove that Minze exercised control over the methamphetamine.

Finally,
Minze contends that the evidence is insufficient to support her conviction
because the State failed to prove that she was aware of the nature of the
methamphetamine that she dropped.  The
record does not include direct evidence showing that Minze knew that she was
carrying methamphetamine, but the jury could infer Minze=s
knowledge of the methamphetamine from the circumstances surrounding her
offense.  See Shipp v. State,
292 S.W.3d 251, 258 (Tex. App.CTexarkana
2009, no pet.); Krause v. State, 243 S.W.3d 95, 111 (Tex. App.CHouston
[1st Dist.] 2007, pet. ref=d).








Here,
the item that contained the methamphetamine was a small Ziplock-type plastic
bag that was inside a larger plastic bag. 
According to Corporal Winterrowd, the small bag contained a Avisible
amount of light colored crystals.@  Pierce and other Wal-Mart employees
immediately suspected that the item that Pierce had found contained contraband
based on the item=s appearance; that suspicion
caused Jordan to call the police. 
Specifically, when Pierce picked up the item and looked at it, she
thought, AOh, no, I think this is a
controlled substance.@ 
When Jordan took the item to the front of the store and asked other
employees about the item, the employees told Jordan that the item Adidn=t look
good.@  We have held that a defendant=s
knowledge that an item contains contraband may be inferred, in part, by the
item=s visual
characteristics, such as its packaging.  See
Brown v. State, 878 S.W.2d 695, 700 (Tex. App.CFort
Worth 1994), aff=d, 911
S.W.2d 744 (Tex. Crim. App. 1995).  And
the record does not contain any evidence indicating, contrary to the evidence
noted above, that the item found by Pierce could have been mistaken for
anything other than contraband.








Furthermore,
Ait is
reasonable to infer that people know what they have on their person.@  Valle v. State, 223 S.W.3d 538, 540
(Tex. App.CAmarillo 2006, pet. dism=d); see
Jenkins v. State, 870 S.W.2d 626, 628 (Tex. App.CHouston
[1st Dist.] 1994, pet. ref=d)
(holding that the fact that a tube containing cocaine was found in the
defendant=s pants pocket comprised
evidence that the defendant knowingly possessed the cocaine), cert. denied,
516 U.S. 1080 (1996); Scott v. State, 825 S.W.2d 521, 523 (Tex. App.CDallas
1992, pet. ref=d) (holding similarly).  Accordingly, we conclude that it was
reasonable for the jury to infer that Minze knew that what she was carryingCwhether
in her lap or underneath her skirtCcontained
contraband. Finally, Pierce testified that Minze was acting paranoid before
dropping the drugs.

For all
of these reasons, we conclude that a rational trier of fact could have found
beyond a reasonable doubt that Minze knowingly possessed methamphetamine.  See Jackson, 443 U.S. at 319, 99 S.
Ct. at 2789; Clayton, 235 S.W.3d at 778. 
Therefore, we hold that the evidence is legally sufficient to support
Minze=s
conviction, and we overrule Minze=s first
point.

Admission of Jordan=s
Identification Testimony

In her
second point, Minze argues that the trial court erred by admitting allegedly
improper hearsay testimony.  Specifically,
she contends, AThe Court erred in permitting
Jordan to testify about identification of [Minze] in any manner because
[Jordan] never perceived [Minze].@  Minze asserts that Jordan=s
identification of her Awas not based upon her own
knowledge but was merely a repetition of what she had been told [by Pierce.]@








We
review a trial court=s decision to admit evidence
under an abuse of discretion standard, reversing the trial court=s
decision only if it is outside the zone of reasonable disagreement.  Ellison v. State, 86 S.W.3d 226, 227 (Tex.
Crim. App. 2002); Paschall v. State, 285 S.W.3d 166, 172 (Tex. App.CFort
Worth 2009, pet. ref=d).  In her brief, Minze does not specify a
particular hearsay objection of which she claims that the trial court erred by
overruling. Instead, she generally directs us to four pages of the reporter=s record
that are part of Jordan=s testimony.  In those four pages, Minze made three hearsay
objections; the trial court agreed with Minze=s
position on the first two of those objections.[6]  The following exchange regards the third
objection that Minze made during the State=s direct
examination of Jordan: 

[THE STATE:] 
Did you direct the police officer=s attention to the customer that dropped the
item?

 

[DEFENSE COUNSEL]:  Object to leading.

 

THE COURT: 
I=ll permit that question.

 

[DEFENSE COUNSEL]: May I ask her one question on
voir dire, Your Honor?

 

THE COURT:  All right.

 

. . . .

 

[DEFENSE COUNSEL:]  Did you see a woman drop anything?

 

A.  I did
not personally see her, no.

 

[DEFENSE COUNSEL:]  I=d object to any more testimony she would testify
about because it would be predicated on hearsay, Your Honor.

 

THE COURT: 
Overruled.  I=ll let her testify to
what she did. 

 








Jordan then testified that she
had directed the officers to Minze without stating exactly what Pierce had told
her about Minze.  Then, during Minze=s
cross-examination of Jordan and in the State=s
redirect examination, without any objection, Jordan testified specifically that
Pierce had told her that Minze was the person who had dropped the drugs.  For example, during the State=s
redirect examination, the following exchange occurred:

[THE STATE:] 
Ms. Jordan, the person that you pointed out to the police as the woman
that dropped the item, was the same woman that Kathleen Pierce identified to
you as the woman that dropped the item?

 

A.  Yes it
was.

 

To
preserve error in the admission of evidence, the defendant must continue to
object each time the objectionable evidence is offered.  Lane v. State, 151 S.W.3d 188, 192B93 (Tex.
Crim. App. 2004) (quoting Valle v. State, 109 S.W.3d 500, 509 (Tex.
Crim. App. 2003)); Martinez v. State, 98 S.W.3d 189, 193 (Tex. Crim.
App. 2003); see Tex. R. App. P. 33.1(a)(1). Thus, a trial court=s
erroneous admission of evidence will not require reversal when other such
evidence was received without objection, either before or after the complained‑of
ruling.  Leday v. State, 983
S.W.2d 713, 718 (Tex. Crim. App. 1998); Wenger v. State, 292 S.W.3d 191,
202 (Tex. App.CFort Worth 2009, no pet.).








Because
Minze complains about Jordan=s
testimony concerning Pierce=s
identification of Minze and because that testimony was admitted without
objection (in part because of Minze=s
counsel=s
questioning) after Minze had initially objected to similar testimony, we hold
that Minze did not preserve error on the testimony=s
admission, and we overrule her second point. 
See Tex. R. App. P. 33.1(a)(1); Wenger, 292 S.W.3d at 202;
Martinez v. State, 236 S.W.3d 361, 373 (Tex. App.CFort
Worth 2007, pet. dism=d).

Release of Juror Information

In her
third point, Minze contends that the trial court erred by overruling her motion
that asked the court to unseal and release her jury=s
information cards.  During the jury=s
deliberation, it sent the trial court a note that asked the court if it
prevented the State from presenting evidence about Minze=s past
convictions Aas a way to shed more light on
[Minze=s]
character.@ 
The trial court responded by stating, A[P]lease
be governed by the chargeCand don=t
concern yourselves with something not in evidence.@








Based on
the jury=s note
to the court, several days after the trial court entered its judgment
convicting Minze, she filed a motion under article 35.29 of the code of criminal
procedure that asked the court to release the information cards for the members
of her jury.  Minze=s motion
stated, AThe
obvious concern is whether any outside influence was improperly brought to bear
upon members of this jury in considering extraneous and inadmissible matters.@  After the State filed a response to Minze=s motion
and the trial court held a hearing, the trial court denied the motion and
stated that 

the proper remedy . . . will be to provide the name and address of the
foreman of the jury whereby [Minze=s] counsel will be able to contact the foreman in
the format approved by the court to determine whether substantial evidence
exists to warrant good cause for [Minze=s] counsel to have access to juror information
cards.  Contact will be limited to the
foreman until evidence of good cause is presented.[[7]]

 

Article 35.29 states, 

 

Information collected by the court or by a
prosecuting attorney during the jury selection process about a person who
serves as a juror . . . is confidential and may not be disclosed . . . except
on application by a party in the trial . . . . 
On a showing of good cause, the court shall permit disclosure of the
information sought.

 

Tex. Code Crim. Proc. Ann. art.
35.29 (Vernon Supp. 2009); see Mayo v. State, 971 S.W.2d 464, 465 (Tex.
App.CFort
Worth 1998) (stating that A[p]lainly,
article 35.29 is intended to protect jurors by keeping their addresses and
other personal information confidential in the absence of a trial court order),
rev=d on other grounds, 4
S.W.3d 9 (Tex. Crim. App. 1999).








In Hooker
v. State, the Beaumont Court of Appeals held that article 35.29>s good
cause showing Amust be based upon sworn
testimony or other sufficient supportive evidence in the record.@  932 S.W.2d 712, 716 (Tex. App.CBeaumont
1996, no pet.).  The court noted that the
defendant=s counsel had only stated that Ashe had >a couple
of thoughts= regarding the trial and wanted
an opportunity to talk to the jury,@ and the
court held that counsel=s statement did not provide good
cause for releasing the jurors= information.  Id. at 716B17.  Similarly, in Esparza v. State, the
San Antonio Court of Appeals explained that under article 35.29, what Aconstitutes
good cause must necessarily be based upon more than a mere possibility that
jury misconduct might have occurred. . . . 
Good cause must be based on more than mere conjecture; it must have a
firm foundation.@ 
31 S.W.3d 338, 340 (Tex. App.CSan
Antonio 2000, no pet.) (holding that the defendant did not meet the good cause
standard because he alleged only general allegations of jury misconduct); see
also Cyr v. State, No. 04‑08‑00771‑CR, 2009 WL 4840955,
at *8B9 (Tex.
App.CSan
Antonio Dec. 16, 2009, no pet.) (holding that a juror=s
telling the media that she was not comfortable with her guilty verdict was not
good cause for release of jurors=
information under article 35.29).








The jury=s note
to the court in this case does nothing more than present mere conjecture as to
whether misconduct occurred.  As the
State asserts, the note does not reveal whether the jury knew of any of Minze=s
history or whether it discussed or considered the history in rendering the
guilty verdict. Although Minze labels her concern about jury misconduct as
potential Aoutside influence,@ such
influence must originate outside Aof both
the jury room and the juror.@  Fenoglio v. State, 252 S.W.3d 468, 477
(Tex. App.CFort Worth 2008, pet. ref=d).  There is no indication that the jury=s note
to the trial court was based on anything more than the conversation between the
jurors during its deliberation of Minze=s
verdict.

Because
Minze did not meet the standard of good cause under article 35.29 for release
of the jurors= information, we hold that the
trial court did not err by denying Minze=s motion
in that regard, and we overrule Minze=s third
point.

Conclusion

Having
overruled all of Minze=s points, we affirm the trial
court=s
judgment.

TERRIE LIVINGSTON

JUSTICE

 

PANEL:  LIVINGSTON, GARDNER, and
WALKER, JJ.

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 18, 2010











[1]See Tex. R. App. P. 47.4.





[2]See Tex. Health & Safety
Code Ann. '' 481.102(6), .115(d)
(Vernon Supp. 2009).





[3]Pierce said, AI was watching [Minze] as
I went to the pole and got [the absorbent pad].@  Minze argues in her brief that Pierce left
the item that dropped to the ground unattended, but the record does not
establish that the item was ever outside of Pierce=s sight.





[4]Minze did not assert her
relevance complaint as an independent point of error but instead raised it as
part of her legal sufficiency challenge. 
We note that even if the trial court had erred by admitting the
methamphetamine exhibit, we must consider all the evidence admitted at trial,
even improperly admitted evidence, when performing a legal sufficiency
review.  Clayton, 235 S.W.3d at
778.





[5]Pierce said, A[Minze] went to stand up,
and this thing fell out from her short skirt. 
And I didn=t know if it was in her
lap or if it came from underneath her skirt. 
But I was looking at it because it wasn=t the lingerie that she
was taking off the rack.@





[6]The trial court
explicitly sustained the first objection; when Minze made the second objection,
the trial court did not explicitly rule on the objection but responded by
telling Jordan, ADon=t say what someone else
said.@





[7]The record does not
indicate whether Minze=s counsel contacted the
jury=s foreman as allowed by
the trial court, but Minze asserts in her brief that the trial court=s solution was Aunprecedented and
prejudicial to [her] ability to investigate jury misconduct.@