

# COURT OF APPEALS

**SECOND DISTRICT OF TEXAS**
**FORT WORTH**


**NO. 2-09-129-CR**


VICKI LARGENT MINZE A/K/A                                              APPELLANT
VICKI HACKNEY MINZE A/K/A
VICKI HACKNEY LARGENT A/K/A
VICKI HACKNEY

V.

THE STATE OF TEXAS                                                           STATE

------------

FROM THE 43RD DISTRICT COURT OF PARKER COUNTY

------------

## MEMORANDUM OPINION[1]

------------

In three points, appellant Vicky Largent Minze a/k/a Vicki Hackney Minze a/k/a Vicki Hackney Largent a/k/a Vicki Hackney (hereinafter "Minze") appeals her second-degree felony conviction for possessing between four and two hundred grams of methamphetamine.[2]  We affirm.

---

[1] *See* Tex. R. App. P. 47.4.

[2] *See* Tex. Health & Safety Code Ann. §§ 481.102(6), .115(d) (Vernon Supp. 2009).

**Background Facts**

At around two o'clock one morning in January 2007, Kathleen Pierce, an employee at Wal-Mart in Azle, was in the store's lingerie department when she saw Minze, who was "acting really paranoid." Minze was wearing a short skirt and a low-cut shirt, and she was riding in an electric scooter. Minze stood up from the scooter to reach a rack of clothes, and when she did so, something fell to the ground. While maintaining eye contact with Minze (who did not notice that the item had dropped to the ground), Pierce went to a spill station pole and grabbed an absorbent pad.[3] After Minze left the immediate area, Pierce picked up the item, which looked to Pierce like a rubber glove "with white stuff all over it."

Pierce called her manager, Tanika Jordan. Jordan looked at the item, took it to the front of the store, and called the Azle police department. Corporal Michael Winterrowd took the item, noticed that it contained "a visible amount of light colored crystals," and put it in his pocket. Jordan and Pierce then directed another Azle police officer, David Poe, to Minze, who began screaming and cursing. The officers gave Minze a disorderly conduct citation and a

---

[3] Pierce said, "I was watching [Minze] as I went to the pole and got [the absorbent pad]." Minze argues in her brief that Pierce left the item that dropped to the ground unattended, but the record does not establish that the item was ever outside of Pierce's sight.

2

criminal trespass warning, and they escorted her away from the store. They took a statement from Pierce, but they did not immediately arrest Minze.

At the police station later that morning, the contents of the item tested positive for a controlled substance. Several months later, the police sent the item to a lab for testing, and a chemist confirmed that the item contained 6.58 grams of methamphetamine.

In January 2008, a Parker County grand jury indicted Minze for possessing methamphetamine. At trial, Minze pled not guilty, but the jury found her guilty. After the trial court heard evidence about Minze's criminal history and listened to testimony from Minze's mother, it sentenced Minze to fifteen years' confinement. Minze filed her notice of this appeal.

**Legal Sufficiency**

In her first point, Minze contends that the evidence is legally insufficient to support her conviction. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the

3

testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778.

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008), *cert. denied*, 129 S. Ct. 2075 (2009). Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131 (2000). Instead, we "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We must presume that the factfinder resolved any conflicting inferences in favor of the prosecution and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

Minze first asserts that the evidence is insufficient to sustain her conviction because (1) neither Pierce nor Jordan identified the State's exhibit that contained methamphetamine as the same item that Pierce saw drop from Minze and (2) Pierce's and Jordan's description of the item differed from

4

Corporal Winterrowd's description. She therefore argues that the trial court erred on relevancy grounds by admitting the methamphetamine exhibit because the State did not show a sufficient nexus between her and the drugs.

Evidence is relevant if it has any tendency to make the existence of any consequential fact more or less probable than it would be without the evidence. Tex. R. Evid. 401; *Guy v. State*, 160 S.W.3d 606, 615 (Tex. App.—Fort Worth 2005, pet. ref'd). "A trial court's determination of relevancy is not disturbed absent an abuse of discretion." *Guy*, 160 S.W.3d at 615; *Marc v. State*, 166 S.W.3d 767, 774 (Tex. App.—Fort Worth 2005, pet. ref'd) ("As long as the trial court's ruling admitting the evidence was within the 'zone of reasonable disagreement,' there is no abuse of discretion and the trial court's ruling will be upheld.").

The State presented evidence that an item fell from Minze and established—through uncontroverted evidence—the item's unbroken chain of custody from Pierce, who first saw the item, to Jordan, and then to Corporal Winterrowd. Corporal Winterrowd testified, "[Jordan] provided me with a bag that her employee had seen dropped onto the floor. I handled it with surgical gloves and seized it as evidence." Corporal Winterrowd then identified the item in court as the same one given to him at Wal-Mart; when the State questioned

5

him about the methamphetamine exhibit, he said, "That was the bag provided to me by the store employee that said [she] found it on the floor."

Thus, although neither Pierce nor Jordan specifically identified the State's methamphetamine exhibit as the same item that they handled on the night of Minze's offense, the evidence nonetheless established that the item admitted at trial is the same as the item found by Pierce. Also, although Pierce's description of the item containing methamphetamine differs somewhat from Corporal Winterrowd's description (Pierce described the item as looking like a twisted rubber glove and Corporal Winterrowd described it as looking like plastic bags), we must defer to the jury's resolution of conflicting testimony in the prosecution's favor in our legal sufficiency review. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778. Thus, we hold that the trial court did not err by admitting the methamphetamine exhibit.[4] *See Jones v. State*, 617 S.W.2d 704, 705 (Tex. Crim. App. [Panel Op.] 1981) (holding that an item that is offered into evidence should not be rejected merely because it is not positively identified at trial by every person in the item's chain

___

[4] Minze did not assert her relevance complaint as an independent point of error but instead raised it as part of her legal sufficiency challenge. We note that even if the trial court had erred by admitting the methamphetamine exhibit, we must consider all the evidence admitted at trial, even improperly admitted evidence, when performing a legal sufficiency review. *Clayton*, 235 S.W.3d at 778.

of custody); *Salinas v. State*, 507 S.W.2d 730, 731 (Tex. Crim. App. 1974) (holding similarly).

Next, Minze argues that the State did not prove that she controlled the item that contained methamphetamine. In other words, she contends that the State failed to prove her affirmative links to the methamphetamine.

As the court of criminal appeals has stated,

> To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous. This is the whole of the so-called 'affirmative links' rule."

*Poindexter v. State*, 153 S.W.3d 402, 405–06 (Tex. Crim. App. 2005) (footnotes omitted); *see* Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2009); Tex. Penal Code Ann. § 6.01(b) (Vernon 2003); *Beall v. State*, 237 S.W.3d 841, 849 (Tex. App.—Fort Worth 2007, no pet.); *Tucker v. State*, 183 S.W.3d 501, 510 (Tex. App.—Fort Worth 2005, no pet.). In other words, when "*the accused is not in exclusive possession of the place where the substance is found*, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to

7

the contraband." *Poindexter*, 153 S.W.3d at 406 (emphasis added) (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981)). Thus, the "affirmative links" test does not apply when the evidence shows that the defendant had exclusive possession of the contraband. *Ramirez v. State*, 897 S.W.2d 428, 436 (Tex. App.—El Paso 1995, no pet.); *see Poindexter*, 153 S.W.3d at 407 ("[T]he parties agree . . . that appellant was linked to the Van Loan house where the contraband was found, but that he did not have exclusive possession of it. . . . Thus, we look for additional facts and circumstances which affirmatively link appellant to the drugs.").

Here, the evidence establishes Minze's exclusive control of the methamphetamine before it was found by Pierce. Pierce, who was only eight to ten feet away from Minze when the drugs dropped, testified that she had no doubt that they dropped from Minze.[5] Pierce explained that the drugs could not have been on the store's floor before Minze dropped them because the store's maintenance crew had previously swept the area in which the drugs dropped and because Pierce had been working in the area and would have noticed them. There were no people other than Minze and Pierce in the area where the drugs

---

[5] Pierce said, "[Minze] went to stand up, and this thing fell out from her short skirt. And I didn't know if it was in her lap or if it came from underneath her skirt. But I was looking at it because it wasn't the lingerie that she was taking off the rack."

were found at the time that they were found, and the record does not contain evidence that could indicate that the drugs appeared on the store's floor in any way other than Minze's dropping them there. We therefore hold that the uncontradicted evidence presented at trial is legally sufficient to prove that Minze exercised control over the methamphetamine.

Finally, Minze contends that the evidence is insufficient to support her conviction because the State failed to prove that she was aware of the nature of the methamphetamine that she dropped. The record does not include direct evidence showing that Minze knew that she was carrying methamphetamine, but the jury could infer Minze's knowledge of the methamphetamine from the circumstances surrounding her offense. *See Shipp v. State*, 292 S.W.3d 251, 258 (Tex. App.—Texarkana 2009, no pet.); *Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Here, the item that contained the methamphetamine was a small Ziplock-type plastic bag that was inside a larger plastic bag. According to Corporal Winterrowd, the small bag contained a "visible amount of light colored crystals." Pierce and other Wal-Mart employees immediately suspected that the item that Pierce had found contained contraband based on the item's appearance; that suspicion caused Jordan to call the police. Specifically, when Pierce picked up the item and looked at it, she thought, "Oh, no, I think this is

9

a controlled substance." When Jordan took the item to the front of the store and asked other employees about the item, the employees told Jordan that the item "didn't look good." We have held that a defendant's knowledge that an item contains contraband may be inferred, in part, by the item's visual characteristics, such as its packaging. *See Brown v. State*, 878 S.W.2d 695, 700 (Tex. App.—Fort Worth 1994), *aff'd*, 911 S.W.2d 744 (Tex. Crim. App. 1995). And the record does not contain any evidence indicating, contrary to the evidence noted above, that the item found by Pierce could have been mistaken for anything other than contraband.

Furthermore, "it is reasonable to infer that people know what they have on their person." *Valle v. State*, 223 S.W.3d 538, 540 (Tex. App.—Amarillo 2006, pet. dism'd); *see Jenkins v. State*, 870 S.W.2d 626, 628 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd) (holding that the fact that a tube containing cocaine was found in the defendant's pants pocket comprised evidence that the defendant knowingly possessed the cocaine), *cert. denied*, 516 U.S. 1080 (1996); *Scott v. State*, 825 S.W.2d 521, 523 (Tex. App.—Dallas 1992, pet. ref'd) (holding similarly). Accordingly, we conclude that it was reasonable for the jury to infer that Minze knew that what she was carrying—whether in her lap or underneath her skirt—contained contraband.

10

Finally, Pierce testified that Minze was acting paranoid before dropping the drugs.

For all of these reasons, we conclude that a rational trier of fact could have found beyond a reasonable doubt that Minze knowingly possessed methamphetamine. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Therefore, we hold that the evidence is legally sufficient to support Minze's conviction, and we overrule Minze's first point.

**Admission of Jordan's Identification Testimony**

In her second point, Minze argues that the trial court erred by admitting allegedly improper hearsay testimony. Specifically, she contends, "The Court erred in permitting Jordan to testify about identification of [Minze] in any manner because [Jordan] never perceived [Minze]." Minze asserts that Jordan's identification of her "was not based upon her own knowledge but was merely a repetition of what she had been told [by Pierce.]"

We review a trial court's decision to admit evidence under an abuse of discretion standard, reversing the trial court's decision only if it is outside the zone of reasonable disagreement. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Paschall v. State,* 285 S.W.3d 166, 172 (Tex. App.—Fort Worth 2009, pet. ref'd). In her brief, Minze does not specify a particular hearsay objection of which she claims that the trial court erred by overruling.

11

Instead, she generally directs us to four pages of the reporter's record that are part of Jordan's testimony. In those four pages, Minze made three hearsay objections; the trial court agreed with Minze's position on the first two of those objections.[6] The following exchange regards the third objection that Minze made during the State's direct examination of Jordan:

> [THE STATE:] Did you direct the police officer's attention to the customer that dropped the item?
>
> [DEFENSE COUNSEL]: Object to leading.
>
> THE COURT: I'll permit that question.
>
> [DEFENSE COUNSEL]: May I ask her one question on voir dire, Your Honor?
>
> THE COURT: All right.
>
> . . . .
>
> [DEFENSE COUNSEL:] Did you see a woman drop anything?
>
> A. I did not personally see her, no.
>
> [DEFENSE COUNSEL:] I'd object to any more testimony she would testify about because it would be predicated on hearsay, Your Honor.
>
> THE COURT: Overruled. I'll let her testify to what she did.

---

[6] The trial court explicitly sustained the first objection; when Minze made the second objection, the trial court did not explicitly rule on the objection but responded by telling Jordan, "Don't say what someone else said."

12

Jordan then testified that she had directed the officers to Minze without stating exactly what Pierce had told her about Minze. Then, during Minze's cross-examination of Jordan and in the State's redirect examination, without any objection, Jordan testified specifically that Pierce had told her that Minze was the person who had dropped the drugs. For example, during the State's redirect examination, the following exchange occurred:

> [THE STATE:] Ms. Jordan, the person that you pointed out to the police as the woman that dropped the item, was the same woman that Kathleen Pierce identified to you as the woman that dropped the item?
>
> A. Yes it was.

To preserve error in the admission of evidence, the defendant must continue to object each time the objectionable evidence is offered. *Lane v. State*, 151 S.W.3d 188, 192–93 (Tex. Crim. App. 2004) (quoting *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003)); *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003); *see* Tex. R. App. P. 33.1(a)(1). Thus, a trial court's erroneous admission of evidence will not require reversal when other such evidence was received without objection, either before or after the complained-of ruling. *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998); *Wenger v. State*, 292 S.W.3d 191, 202 (Tex. App.—Fort Worth 2009, no pet.).

Because Minze complains about Jordan's testimony concerning Pierce's identification of Minze and because that testimony was admitted without objection (in part because of Minze's counsel's questioning) after Minze had initially objected to similar testimony, we hold that Minze did not preserve error on the testimony's admission, and we overrule her second point. *See* Tex. R. App. P. 33.1(a)(1); *Wenger*, 292 S.W.3d at 202; *Martinez v. State*, 236 S.W.3d 361, 373 (Tex. App.—Fort Worth 2007, pet. dism'd).

**Release of Juror Information**

In her third point, Minze contends that the trial court erred by overruling her motion that asked the court to unseal and release her jury's information cards. During the jury's deliberation, it sent the trial court a note that asked the court if it prevented the State from presenting evidence about Minze's past convictions "as a way to shed more light on [Minze's] character." The trial court responded by stating, "[P]lease be governed by the charge—and don't concern yourselves with something not in evidence."

Based on the jury's note to the court, several days after the trial court entered its judgment convicting Minze, she filed a motion under article 35.29 of the code of criminal procedure that asked the court to release the information cards for the members of her jury. Minze's motion stated, "The obvious concern is whether any outside influence was improperly brought to bear upon

14

members of this jury in considering extraneous and inadmissible matters." After the State filed a response to Minze's motion and the trial court held a hearing, the trial court denied the motion and stated that

> the proper remedy . . . will be to provide the name and address of the foreman of the jury whereby [Minze's] counsel will be able to contact the foreman in the format approved by the court to determine whether substantial evidence exists to warrant good cause for [Minze's] counsel to have access to juror information cards. Contact will be limited to the foreman until evidence of good cause is presented.[7]

> Article 35.29 states,

> Information collected by the court or by a prosecuting attorney during the jury selection process about a person who serves as a juror . . . is confidential and may not be disclosed . . . except on application by a party in the trial . . . . On a showing of good cause, the court shall permit disclosure of the information sought.

Tex. Code Crim. Proc. Ann. art. 35.29 (Vernon Supp. 2009); *see Mayo v. State*, 971 S.W.2d 464, 465 (Tex. App.—Fort Worth 1998) (stating that "[p]lainly, article 35.29 is intended to protect jurors by keeping their addresses and other personal information confidential in the absence of a trial court order), *rev'd on other grounds*, 4 S.W.3d 9 (Tex. Crim. App. 1999).

---

[7] The record does not indicate whether Minze's counsel contacted the jury's foreman as allowed by the trial court, but Minze asserts in her brief that the trial court's solution was "unprecedented and prejudicial to [her] ability to investigate jury misconduct."

15

In *Hooker v. State*, the Beaumont Court of Appeals held that article 35.29's good cause showing "must be based upon sworn testimony or other sufficient supportive evidence in the record." 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no pet.). The court noted that the defendant's counsel had only stated that "she had 'a couple of thoughts' regarding the trial and wanted an opportunity to talk to the jury," and the court held that counsel's statement did not provide good cause for releasing the jurors' information. *Id.* at 716–17. Similarly, in *Esparza v. State*, the San Antonio Court of Appeals explained that under article 35.29, what "constitutes good cause must necessarily be based upon more than a mere possibility that jury misconduct might have occurred. . . . Good cause must be based on more than mere conjecture; it must have a firm foundation." 31 S.W.3d 338, 340 (Tex. App.—San Antonio 2000, no pet.) (holding that the defendant did not meet the good cause standard because he alleged only general allegations of jury misconduct); *see also Cyr v. State*, No. 04-08-00771-CR, 2009 WL 4840955, at *8–9 (Tex. App.—San Antonio Dec. 16, 2009, no pet.) (holding that a juror's telling the media that she was not comfortable with her guilty verdict was not good cause for release of jurors' information under article 35.29).

The jury's note to the court in this case does nothing more than present mere conjecture as to whether misconduct occurred. As the State asserts, the

16

note does not reveal whether the jury knew of any of Minze's history or whether it discussed or considered the history in rendering the guilty verdict. Although Minze labels her concern about jury misconduct as potential "outside influence," such influence must originate outside "of both the jury room and the juror." *Fenoglio v. State*, 252 S.W.3d 468, 477 (Tex. App.—Fort Worth 2008, pet. ref'd). There is no indication that the jury's note to the trial court was based on anything more than the conversation between the jurors during its deliberation of Minze's verdict.

Because Minze did not meet the standard of good cause under article 35.29 for release of the jurors' information, we hold that the trial court did not err by denying Minze's motion in that regard, and we overrule Minze's third point.

### Conclusion

Having overruled all of Minze's points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, GARDNER, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: March 18, 2010

17