**Allen D. HOOKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 09–95–182 CR.

Court of Appeals of Texas,
Beaumont.

Submitted June 27, 1996.

Decided Oct. 23, 1996.

---

Margarett J. Goodson, Conroe, for appellant.

Daniel C. Rice, District Attorney, Conroe, for state.

Before WALKER, C.J., and BURGESS and STOVER, JJ.

## OPINION

WALKER, Chief Justice.

A jury convicted appellant of having committed the felony offense of Driving While Intoxicated—Subsequent Offense. The jury then assessed punishment at confinement in the Texas Department of Criminal Justice—Institutional Division for a term of fifteen (15) months, and fined appellant $2,000. The jury recommended that appellant's sentence be probated as to the fine only, for a term of five (5) years. Appellant raises two points of error for our consideration. Each point of error has a number of subpoints some of which require separate analysis and disposition. Although multifarious, we will nevertheless address each issue when necessary. The points of error are presented to this Court in the following manner:

Point of Error I: The trial court erred in convicting appellant for the offense of driving while intoxicated—subsequent offense because the circumstantial and opinion evidence was insufficient to prove the element of intoxication.

A. Although the arresting officer was established as a drug recognition expert, his expertise in recognizing drug intoxication was dependent on the administration of a variety of tests on the appellant, only two of which were actually performed.

B. The Court erred in admitting into evidence the videotape of appellant made after his arrest since the state failed to lay a proper predicate for its admission.

C. The court erred in admitting pharmaceutical warnings into evidence because such documents should have been excluded on the basis of hearsay and relevance.

Point of Error II: The trial court abused its discretion in denying the appellant's motion to open sealed records containing juror information because the appellant

had shown "good cause" as required by Article 35.29 of the Texas Code of Criminal Procedure.

A. Article 35.29 of the Texas Code of Criminal Procedure mandates the court release personal information regarding the jury to a party to the trial upon request and a showing of good cause.

B. Appellant showed good cause by advising the court of his belief that jury misconduct had occurred and his need to interview members of the jury, and by indicating to the court his desire to question jurors about the possibility of improper communications between the court and the jury during deliberations.

C. By releasing only the name and phone number of the jury foreman, the court unduly prejudiced the appellant's ability to investigate both jury misconduct and the improper oral communication between the court and the jury prior to filing of the motion for new trial.

■ In examining appellant's first point of error, we note that it is couched in terms of insufficient evidence to support the conviction. However, appellant's basis for such a contention is that two items of evidence were improperly admitted and that the arresting officer lacked sufficient information on which to base his conclusion that appellant was intoxicated from having ingested prescription pain medication. Interestingly, appellant does not cite us to *Jackson v. Virginia* [1] or to any of its progeny as is the usual practice when raising the lack of legally sufficient evidence to support a conviction.[2] At any rate, when reviewing the record for legally sufficient evidence to sustain a conviction, an appellate court must consider all of the evidence presented to the factfinder, *whether properly or improperly admitted.* *Nickerson v. State*, 810 S.W.2d 398, 400 (Tex.Crim. App.1991). The pertinent portion of the application paragraph instructed the jury that it could convict appellant if it found beyond a reasonable doubt that:

... the defendant, ALLEN DEAN HOOKER, did then and there drive and operate a motor vehicle in a public place while intoxicated, to-wit: not having the normal use of his mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, or a combination of two or more of those substances into the body; ...

■ The record before us reflects that the arresting officer, Trooper John Hart of the Texas Department of Public Safety, first noticed appellant as appellant pulled around two vehicles stopped at a railroad crossing, and maneuvered around the lowered railroad crossing arms at a high rate of speed. Trooper Hart began following appellant's vehicle and noticed said vehicle weave "all over the road, back and forth across the center stripe." Trooper Hart activated his emergency lights and appellant eventually stopped his vehicle in the middle of the traffic lane. The trooper observed appellant while appellant sat in his car and noted that appellant appeared "real sluggish, disoriented, real slow to respond to my questions and to find his driver's license. His speech was mumbled, slurred." At one point, appellant exited his vehicle. Trooper Hart then noticed appellant to be somewhat unsteady on his feet and that appellant's eyes were glassy and bloodshot. The trooper was unable to detect any odor of alcohol on or about appellant's person. When asked by the trooper to perform field sobriety tests, appellant responded that he was unable to because of an automobile accident he was in one year prior. The trooper then requested appellant perform two sobriety tests involving only the hands. In the trooper's opinion, appellant performed very poorly in both tests. The trooper then conducted a Horizontal Gaze Nystagmus (HGN) test on appellant. This test indicated that appellant was intoxicated. Trooper Hart then testified that based upon his experience and training, which included serving as primary officer in approximately 555 ar-

---

**1.** 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

**2.** Neither does appellant attempt to raise, properly nor otherwise, a factual insufficiency issue under the authority of *Clewis v. State*, 922

S.W.2d 126 (Tex.Crim.App.1996). No issue regarding factual insufficiency is before us for review, and no further mention of said issue will be made.

rests for driving while intoxicated offenses, he was of the opinion that appellant did not have the normal use of his mental and physical faculties at the time of the arrest and could not operate a motor vehicle in a safe manner. Appellant was then arrested for driving while intoxicated.

Appellant was read his *Miranda v. Arizona*[3] warnings and placed in the trooper's patrol unit. The trooper observed several empty prescription bottles on the rear floorboard behind the driver's seat inside appellant's vehicle. A search of appellant's person incident to the arrest turned up two prescription bottles, one containing Vicodin, and the other containing Toradol. The trooper testified that upon being arrested, appellant stated that he (appellant) had been taking both Vicodin and Toradol and that he had been previously arrested for D.W.I. based upon having taken said medications. During the D.W.I. interview at the police station, appellant said that he had taken a dose of Vicodin and Toradol one hour before. Appellant initially refused to submit to a drug evaluation examination.

The State later called a registered pharmacist as a witness. She indicated that Vicodin is a Schedule Three controlled substance. State's Exhibit 6, which had been previously admitted without objection, is a pharmacy prescription vial labeled "Vicodin." A warning label attached to the vial contained language to the effect that the medication may cause drowsiness, that alcohol may intensify the effect, and that care must be taken when operating a vehicle or dangerous machinery. At one point during direct examination, the registered pharmacist read from a portion of the Physicians' Desk Reference, without objection from appellant. Said portion reads as follows:

> Vicodin tablets, like all narcotics, may impair the mental and/or physical abilities required for the performance of potentially hazardous tasks such as driving a car or operating machinery. Patients should be cautioned accordingly.

■ Based upon the testimony and exhibits before the jury as described above, we find that any rational trier of fact could have found, beyond a reasonable doubt, that appellant had lost the normal use of his mental or physical faculties from ingesting the controlled substance Vicodin on the night in question. We further find that any error in admitting State's Exhibits 8 and 10 was cured as the same evidence was introduced without objection elsewhere during the trial. *See Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990), *cert. denied*, 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *rev'd on other grounds*, 815 S.W.2d 681 (Tex.Crim.App.1991). Points of error 1(A) and 1(C) are overruled.

■ Part B of point of error one is also without merit as it complains that the State failed to show the manner of the preservation of the videotape. Appellant's brief fails to cite to or discuss TEX.R.CRIM. EVID. 901, the controlling provision on issues of authentication and identification of evidentiary items. Rule 901(a) provides generally that when authentication or identification is necessary, the requirement "is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." *Kephart v. State*, 875 S.W.2d 319 (Tex.Crim.App. 1994), dealt with the specific complaint that a proper predicate had not been laid for introduction of a videotape. The Court in *Kephart* discussed the issue at length comparing pre-Rules cases with the language in Rule 901. The Court's analysis contained the following language:

> [ ] Rule 901(b) lists several non-exclusive examples of how authentication may be accomplished. Rule 901(b)(1), entitled "Testimony of witness with knowledge," provides for authentication of evidence by "[t]estimony that a matter is what it is claimed to be." This rule requires the sponsoring witness to have knowledge that the evidence is what its proponent says it is. "An obvious method of satisfying the requirement of prima facie identification of an item and/or its source, etc., is to present the testimony of a person with personal knowledge that the item is what it is claimed to be." Goode, Wellborn and Sharlot, [Texas rules of Evidence: Civil

---

**3.** 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

and Criminal § 901.1, 2 Texas Practice 192 (2nd Ed.1993)] supra, § 901.3, 2 Texas Practice at 194. [footnote omitted] Regarding photographs or motion pictures then, Rule 901(b) allows for authentication to be accomplished by the testimony of any witness who has personal knowledge that the particular item accurately represents the scene or event it purports to portray. [footnote omitted] Since video tapes are considered photographs for purposes of our evidentiary rules, Tex.R.Crim.Evid. 1001(2),[4] we hold Rule 901(a) and (b) are applicable in the instant case.

*Id.* at 321.

■ In the instant case, Trooper Hart testified that he was present when State's Exhibit 4, the videotape was made, that he operated the equipment, that he has viewed the videotape and that it contained an accurate depiction of the events as they took place on the evening in question, that the videotape had not been altered in any way since the recording took place, and that no tampering of the videotape had taken place. Clearly, Trooper Hart's testimony properly authenticated State's Exhibit 4 as he had personal knowledge of when and where the tape had been made and that the tape accurately represented the actual events at the time they occurred. As such, authentication under Rule 901 was satisfied. *See Kephart,* 875 S.W.2d at 322–323. Point of error 1(B) is overruled.

■ Appellant's second point of error contends that good cause was shown to the trial court permitting appellant access to the addresses and telephone numbers of the jurors under Tex.Code Crim. Proc. Ann. art. 35.29 (Vernon Supp.1996). The record before us indicates that on May 1, 1995, appellant filed a handwritten "Motion to Open Sealed Records" with the trial court. This motion was not supported by affidavit. The appellate record does not indicate that appellant requested an evidentiary hearing on the issue. There is a handwritten notation on the last page of the motion which both parties agree is by the trial court permitting appellant access to information on the "presiding juror." Thereafter, on May 31, 1995, appellant filed a motion for new trial supported by affidavit of trial counsel. The only portion of said affidavit which remotely relates to the issue under consideration reads as follows:

> Furthermore, during the jury deliberations, the Judge went to the door of the jury room and advised the jury that due to other commitments, they would have to discontinue deliberations for the evening in a few more minutes. The Judge immediately returned and advised both the state and the defendant that a jury (sic) had been reached, that only the verdict needed to be signed.

Under former Code of Criminal Procedure art. 44.08(e) which authorized the courts of appeals to permit the giving of a late notice of appeal "for good cause shown," cases held that a showing of "good cause" must be based upon sworn testimony or other sufficient supportive evidence in the record. *See Abron v. State,* 531 S.W.2d 643, 645 (Tex. Crim.App.1976); *McCuin v. State,* 504 S.W.2d 512, 513 (Tex.Crim.App.1974); *Johnson v. State,* 688 S.W.2d 656, 657 (Tex.App.— Houston [1st Dist.] 1984, pet. ref'd). While these cases did not involve art. 35.29, their holding with regard to what is necessary to show good cause is entirely applicable to the issue raised in appellant's second point of error.

In the instant case, the motion to open sealed records was not supported by any evidence whatsoever. Appellant's brief references the statement of facts of the formal pronouncement of sentence by the trial court. However, the references are to a colloquy between the trial court and appellant's trial counsel in which trial counsel indicated that she had "a couple of thoughts" regarding the trial and wanted an opportunity to talk to the jury. We first note that this is not sworn testimony and therefore not evidence. But even if it were, it certainly does not rise to good cause so as to require the trial court to provide her with the addresses and telephone

---

4. Tex.R.Crim. Evid. 1001 provides:

For purposes of this article the following definitions are applicable:

(2) Photographs. "Photographs" include still photographs, X-ray films, video tapes, and motion pictures.

**717**

numbers of the jurors. Neither is good cause shown from the portion of trial counsel's affidavit in support of her motion for new trial. We are also not provided with any evidence as to appellant's attempts to contact the presiding juror and what, if anything, was learned from him. We find, therefore, that appellant did not meet his burden of showing good cause to the trial court so as to be entitled to the juror information sought. Point of error two is overruled in its entirety. The judgment and the sentence are affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the judgment. I write only to express my thoughts on point of error two. The record is silent regarding the method or procedure the Court used in sealing the personal information about the jurors. In any event, it seems all participants were, and continue to be, under the impression TEX. CODE CRIM. PROC. ANN. art. 35.29 (Vernon 1994)[5] prohibits the parties from "having access" to that information. The majority apparently follows that thinking when they hold appellant did not show good cause. I disagree. I read the statute to only prohibit disclosure of that information to third parties, except by application and a showing of good cause.

While not exactly on point, in *Saur v. State*, 918 S.W.2d 64 (Tex.App.—San Antonio 1996, no pet.), the Court of Appeals dealt with the trial judge requiring counsel to surrender the juror information sheets. The court stated: "While we think it could be error for the trial judge to require the surrender of the jury information sheets, we also think no harm was shown under the record before this court." The court recognized a distinction between the jury *lists* and the juror *information sheets*. The court held

TEX.CODE CRIM. PROC. ANN. art. 35.26 (Vernon 1989) only requires the parties deliver their jury *lists* to the clerk, not the juror *information sheets*. The court did note where the protection of the jurors is an issue, it might be appropriate to take up the information sheets at the conclusion of the trial with appropriate instruction to counsel about disclosure and counsel should be forewarned so notes could be taken from the sheets.

This is certainly in line with my analysis of article 35.29. As in *Saur*, Hooker has not shown how he was harmed by being denied the information. As noted by the majority, the trial court granted appellant's motion to unseal the records as to the presiding juror's information. Hooker has not shown that juror was even interviewed, much less uncooperative. Consequently, I would overrule point of error two on this basis.

---

5. Article 35.29 of the Code of Criminal Procedure states:

**Personal information about jurors**

Information collected by the court or by a prosecuting attorney during the jury selection process about a person who serves as a juror, including the juror's home address, home telephone number, social security number, driver's license number, and other personal information, is confidential and may not be disclosed by the court, the prosecuting attorney, the defense counsel, or any court personnel except on application by a party in the trial or on application by a bona fide member of the news media acting in such capacity to the court in which the person is serving or did serve as a juror. On a showing of good cause, the court shall permit disclosure of the information sought.