**Opinion issued February 19, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-11-00210-CR

————————————

**WALTER EARL TAYLOR, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 56th District Court**
**Galveston County, Texas**
**Trial Court Case No. 10CR1215**

### OPINION ON REHEARING

On September 3, 2014, this Court granted rehearing in this case and withdrew our judgment and opinion of November 29, 2012. We now issue this opinion and accompanying judgment in their stead.

A jury convicted appellant of possession of cocaine weighing between four and 200 grams.[1] Appellant pleaded true to two enhancements that alleged prior felony convictions, and the jury assessed punishment at 25 years' confinement.[2] In four issues on appeal, appellant contends that (1) he received ineffective assistance of counsel at trial; (2) the trial court submitted the wrong range of punishment to the jury; (3) the evidence was insufficient to prove one of the alleged enhancements; and (4) the trial court erred by refusing appellant access to the juror information cards. We affirm.

## USE OF NON-AGGRAVATED STATE JAIL FELONY PUNISHED AS SECOND DEGREE FELONY TO ENHANCE SECOND DEGREE FELONY

Appellant pleaded true in the present case to two felony enhancement paragraphs. One of the enhancements—cause no. 09CR0724—a conviction for possession of cocaine, was described in the judgment as a second degree felony,

---

[1]   See TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D) (providing that cocaine is penalty group one substance), 481.115(a),(d) (providing that possession of a penalty group one substance in an amount between four and 200 grams is a second degree felony) (Vernon 2010).

[2]   See TEX. PENAL CODE ANN. § 12.42(d) (Vernon 2011) (providing range of punishment between 25 and 99 years for felony conviction enhanced by two prior felony convictions).

and assessed a punishment at two years' confinement. Appellant argues that cause number 09CR0724 was a non-aggravated state jail felony conviction, which cannot be used to enhance his present second degree felony charge. Thus, in three related issues on appeal, appellant contends that (1) his counsel was ineffective for failing to object to the erroneous enhancement; (2) the trial court submitted the wrong range of punishment; and (3) the evidence was insufficient to prove that appellant was a habitual offender.

Determining the merits of appellant's complaint requires that we examine the application and interaction of the enhancement statutes involved.[3] In interpreting a statute, courts look to the literal text of the statute for its meaning and ordinarily give effect to that plain meaning, unless application of the statute's plain language would lead to absurd consequences that the legislature could not possibly have intended, or the plain language is ambiguous. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *State v. Webb*, 12 S.W.3d 808, 811 (Tex. Crim. App. 2000).

---

[3] The statutes involved in this decision were revised and reorganized in 2011, with an effective date of September 1, 2011. *See* Act of May 25, 2011, 82nd Leg., R.S., ch. 834, §§ 7–8, 2011 Tex. Gen. Laws 2104, 2104. Because this offense occurred on April 21, 2011, we apply the prior versions of these statutes. *Id.*

Former Penal Code sections 12.42(d)[4] & (e)[5] are the statutes under which the present second degree felony was enhanced and provide in relevant part as follows:

> (d) [I]f it is shown on the trial of a felony offense other than a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment in the Texas Department of Criminal justice for life, or for any term of not more than 99 years or less than 25 years.

> (e) *A previous conviction for a state jail felony **punished under Section 12.35(a)** may not be used for enhancement purposes under Subsections (b), (c), or (d).* (Emphasis added).

Thus, the question this Court must decide is whether cause no. 09CR0724 is a "state jail felony punished under Section 12.35(a)." *See* TEX. PENAL CODE ANN. § 12.35(a) (Vernon 2011) (defining punishment range for non-aggravated state jail felony). If it is a "state jail felony punished under Section 12.35(a)," it was improper to use it to enhance appellant's present felony conviction.

Cause no. 09CR0724 is a conviction for possession of less than 1 gram of cocaine, which is generally a state jail felony. *See* TEX. HEALTH & SAFETY CODE

---

[4]    Act of May 11, 2009, 81st Leg., R.S., ch. 87, § 25.150, 2009 Tex. Gen. Laws 208, 373, *amended by* Act of May 25, 2011, 82nd Leg., R.S., ch. 834, § 4, 2001 Tex. Gen Laws 2104, 2105 (current version at TEX. PENAL CODE ANN. § 12.42(d) (Vernon 2011)).

[5]    Act of May 24, 1995, 74th Leg., R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2734, 2734–35, *repealed by* Act of May 25, 2011, 82nd Leg. R.S., ch. 834, §6, 2011 Tex. Gen. Laws 2104, 2105 (current version at TEX. PENAL CODE ANN. § 12.42(d) (Vernon 2011)).

4

ANN. §§ 481.102(3)(d), 481.115(b) (Vernon 2010). Such non-aggravated state jail felonies are generally punished by a term of confinement in a state jail for a period of 180 days to 2 years. *See* TEX. PENAL CODE ANN. § 12.35(a) (Vernon 2011). As such, it would be improper to use a non-aggravated state jail felony to enhance a felony conviction. *See* former TEX. PENAL CODE ANN. § 12.42(e) (Act of May 24, 1995, 74th Leg., R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2734, 2734–35 (repealed 2011)).

However, the indictment in cause no. 09CR0724 also alleged two prior felony enhancements, so its punishment was elevated to a second-degree felony pursuant to former Penal Code article 12.42(a)(2), which provides:

> If it is shown on the trial of a state jail felony punishable under Section 12.35(a) that the defendant has previously been finally convicted of two felonies, and the second previous felony conviction is an offense that occurred subsequent to the first previous conviction having become final, on conviction the defendant shall be punished for a second-degree felony.

Act of May 24, 1995, 74th Leg. R.S., ch. 318, § 1, 1995 Tex. Gen. Laws 2734, 2734–35, *amended by* Act of May 25, 2011, 82nd Leg., R.S. ch 834, § 2, 2011 Tex. Gen. Laws 2104, 2104 (current version at TEX. PENAL CODE ANN. § 12.425(b) (Vernon 2011)).

Appellant argues that, even though cause no. 09CR0724 was ultimately punished as a second degree felony, we should look to the crime charged—a non-aggravated state jail felony punishable under section 12.35(a)—to determine

whether the conviction can be used to enhance a subsequent felony conviction. The State responds that, because of the felony enhancements, cause no. 09CR0724 was not punished under section 12.35(a), but was punished only under former section 12.42(a)(2).

The Texas Court of Criminal Appeals recently considered this issue in *Samaripas v. State*, No. PD-135-13, ___S.W.3d___, 2014 WL 5247434 (Tex. Crim. App. Oct. 15, 2014). In *Samaripas*, the defendant was charged with a third-degree felony. *Id.* at *5. The State alleged two prior felony convictions, one a non-aggravated state jail felony that had been enhanced to a second degree felony. *Id.* On appeal, the defendant argued, like appellant does here, that although the punishment for the underlying offense had been enhanced, that did not enhance the level of the underlying offense, and therefore, it should have not been available to enhance his current offense. *Id.* at 6. The court of appeals rejected Samaripas's argument, noting that "[p]unishing a defendant more severely after repeated behavior that has escalated beyond the level of an unenhanced state jail felony offense is neither absurd, nor is its application[,]" and that "[h]ad the Legislature intended to exclude state jail felonies that received enhanced punishment under section 12.42(a)(2) from being used for enhancement, it would have done so." *Samaripas v. State*, No. 13-11-00442-CR, (Tex. App—Corpus Christi 2013), *aff'd in part, rev'd in part on other grounds*, *Samaripas v. State*, 446 S.W.3d 1, 13 (Tex.

Crim. App. Oct. 15, 2014).  The Court of Criminal Appeals agreed, stating as follows:

> We agree with the court of appeals that the plain language of the statute makes it clear that, at the time of Appellant's offense, Section 12.42(e) focused on how the previous state-jail felony was actually punished and precluded from use for enhancement only those state-jail felonies that had not been punished under the range of a higher felony.  Here, [Samaripas] was not punished under Section 12.35(a).  His prior state-jail felony had been enhanced, and he was punished for that offense under Section 12.42(a)(2).  Therefore, the prior offense was properly used for enhancement purposes, and the court of appeals did not err in overruling this issue.

*Samaripas*, 2014 WL 5247434, at *6.

As *Samaripas* makes clear, we must look at how the underlying offense was actually punished to determine whether it was proper to use it to enhance the current, charged offense.  Like the underlying offense in *Samaripas*, here the underlying non-aggravated state jail felony had been enhanced, and appellant was punished for that offense under section 12.42(a)(2).  Because the underlying offense was not punished under 12.35(a), the State was not precluded by section 12.42(e) from using that underlying offense for enhancement of the charged offense.[6]

---

[6]     We note that the legislature repealed 12.42(e) and recodified it in 12.42(d) which now provides that "A previous conviction for a state jail felony *punishable* under Section 12.35(a) may not be used for enhancement purposes under this subsection." TEX. PENAL CODE ANN. § 12.42(d) (Vernon Supp. 2013) (emphasis added). The legislature has changed the word used in the exclusion from "punished" to "punishable." This is a "significant" distinction because enhanced

7

Accordingly, we overrule points of error two and three and the portion of appellant's ineffective assistance of counsel claim that is based on the same argument.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In the remaining issues raised in appellant's first point of error, he contends the trial court erred in denying his motion for new trial, which was based on allegations of ineffective assistance of counsel.

### *Standard of Review and Applicable Law*

We review the trial court's denial of a motion for new trial for abuse of discretion. *See State v. Herndon*, 215 S.W.3d 901, 907 (Tex. Crim. App. 2007). Therefore, "when analyzing the trial court's failure to grant a motion for new trial on the basis of ineffective assistance of counsel, we view the relevant legal standards through the prism of abuse of discretion." *Ramirez v. State*, 301 S.W.3d 410, 415 (Tex. App.—Austin 2009, no pet.) (citing *State v. Gill*, 967 S.W.2d 540, 542 (Tex. App.—Austin 1998, pet. ref'd)). A trial court abuses its discretion only when no reasonable view of the record would support the trial court's ruling. *Holden v. State*, 201 S.W.3d 761, 763 (Tex. Crim. App. 2006).

---

non-aggravated state jail felonies could be used for felony enhancement under former 12.42(e) before the amendment, but now cannot. *Samaripas*, 2014 WL 5247434 at *6 n.5. "Had [appellant] committed the current offense after this amendment, it would not have been proper for his prior state-jail felony to be used for enhancement." *Id.*

Appellant has the duty to bring forth a record that affirmatively demonstrates the alleged ineffectiveness of his counsel by a preponderance of the evidence. *See Scheanette v. State*, 144 S.W.3d 503, 509–10 (Tex. Crim. App. 2004). In order to prevail on a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test set out in *Strickland v. Washington.* 466 U.S. 668, 687, 104 S. Ct. 2052 (1984); *see also Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986) (adopting *Strickland* standard for claims of ineffective assistance of counsel). Under *Strickland,* a defendant must show (1) that the counsel's performance was deficient and (2) that the defendant was prejudiced by the deficient performance. 466 U.S. at 687. Counsel's performance is deficient when it falls "below an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland*, at 669, 688; *see also Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010). An accused is not entitled to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Therefore, counsel's effectiveness is assessed from the perspective at trial, "without the distorting effects of hindsight." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Our review of counsel's performance must be highly deferential. *Strickland,* 466 U.S. at 689. We presume that counsel makes all significant decisions in the exercise of reasonable judgment. *Id.*

*Failure to Impeach with Inconsistent Evidence*

When appellant's house was searched pursuant to a "no knock" warrant, Officers found a safe in the living room that contained crack cocaine and a large amount of money. At trial, Officer Vela testified that appellant had claimed ownership of the safe. However, another officer, Officer Roark, had filed an affidavit in a civil forfeiture case arising from the same offense in which he averred, "Ofc. Vela asked Mr. Golliday about the safe at which time he again advised the safe did not belong to him. Officer Vela then asked appellant about the safe. Mr. Taylor stated to Officer Vela that the safe did not belong to him even though it was found in his house in the living room." Appellant contends that trial counsel was ineffective for failing to impeach Officer Vela with the statements from Officer Roark's affidavit.[7] Specifically, appellant argues that "[t]he only testimony linking Mr. Taylor to the safe came from Officer Vela."

The State responds that even if trial counsel was deficient for failing to question Vela about Roark's affidavit, appellant cannot show that the outcome of the trial would have been different had she done so. We agree. The State did not

---

[7] At the hearing on the motion for new trial, it was appellant's position that Roark had committed perjury by testifying at trial that appellant admitted owning the safe, and testifying to the contrary in his affidavit in support of the forfeiture proceeding. However, on review of the transcript from the trial, which was apparently not yet available at the time of the motion for new trial hearing, it is clear that Officer Vela, not Roark, testified at trial about appellant's admission that he owned the safe. Thus, there was never an issue of perjured testimony, but, at most, a conflict between the two officers' testimonies.

have the burden of proving that appellant owned the safe; it had only to prove that appellant had care, custody, control, or management of the drugs. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (Vernon 2010) (defining "possession").

Here, there was overwhelming evidence linking appellant to the drugs. The police conducted surveillance of Taylor's house and saw several people go in and leave within just a few minutes. This, the officers testified, was consistent with drug dealing. The officers then stopped one of the men that had been seen entering appellant's house and then leaving a short time later. The man had cocaine, and the officers believed that he had gotten the cocaine from appellant.

The officers then got a warrant and searched appellant's house. A man, Golliday, was on the couch in the living room. He was under the influence and had a cigar dipped in narcotics in his hand. Appellant was found in his bedroom. Appellant, too, was under the influence of drugs. The officers also found drug paraphernalia in appellant's bedroom.

In the living room, the officers also found a small safe. Golliday said the safe was not his and he did not have the key. However, he did tell the officers where the key was located. Inside the safe, the officers found more than cocaine and $285 in cash. The officers found mail with appellant's name on it indicating that he lived in the house. They found nothing to indicate that Golliday lived in the

11

house. This evidence affirmatively linked appellant to the drugs. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006) (listing factors that may be considered as affirmatively linking defendant to narcotics). Whether appellant actually owned the safe is just one of many factors to be considered in determining appellant's link to the drugs.

In light of the substantial amount of other evidence linking appellant to the drugs, appellant cannot meet the prejudice prong of the *Strickland* test. *See Dennis v. State,* 151 S.W.3d 745, 752 (Tex. App.—Amarillo 2004, pet. ref'd) (holding overwhelming evidence of appellant's guilt negated reasonable probability that outcome would have been different but for counsel's alleged deficient performance).

### *Failure to Question Officers Regarding "No Knock" Warrant*

Appellant also argues that trial counsel was deficient for failing to question the officers about the necessity of a "no knock" warrant. Specifically, the affidavit in support of the warrant alleged that "there were several handguns inside the residence," but no weapons were found when the house was searched.

At the motion for new trial hearing, trial counsel testified that she was extremely cautious when questioning the officers about the warrant because she did not want to inadvertently "open the door" to the admission of appellant's many prior convictions. Trial counsel also testified that it was a part of her trial strategy

to keep appellant's prior convictions out of evidence, and the trial court had warned her that if she continued in her questioning regarding the necessity of a "no knock" warrant, those priors might come in.

To establish deficient performance under the first prong, a defendant must show that no reasonable trial strategy could justify counsel's conduct. *See Strickland*, 466 U.S. at 689; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). In light of trial counsel's reasonably articulated trial strategy regarding her decision not to question the officers further about the "no knock" warrant, appellant fails to meet the first prong of the *Strickland* test.

We overrule appellant's first point of error.

## ACCESS TO JUROR INFORMATION CARDS

In issue four, appellant contends that the trial court abused its discretion by failing to allow his counsel access to juror information cards. Specifically, appellant contends that (1) two jurors were not registered to vote, so they might not have been qualified to serve as jurors, and (2) he wanted to explore whether he could raise a *Batson* challenge.

### *Standard of Review and Applicable Law*

A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or it acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990) (citations

13

omitted). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001); *Montgomery*, 810 S.W.2d at 391 (op. on reh'g).

By its terms, article 35.29 of the Texas Code of Criminal Procedure protects juror personal information. *See* TEX.CODE CRIM. PROC. ANN. art. 35.29 (Vernon Supp. 2014). When a defendant files a post-trial motion seeking discovery of jurors' personal information, "[h]e is not entitled to such information unless he shows good cause." *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) (citing TEX. CODE CRIM. PROC. ANN. art. 35.29); *see Cyr v. State*, 308 S.W.3d 19, 29 (Tex. App.—San Antonio 2009, no pet.) (stating that article 35.29 "prohibits personal information about jurors from being disclosed after trial unless good cause is shown"). "What constitutes good cause must be based upon more than a mere possibility that jury misconduct might have occurred; it must have a firm foundation." *Id.* at 30; *Esparza v. State*, 31 S.W.3d 338, 340 (Tex. App.—San Antonio 2000, no pet.) (stating that "[w]hat constitutes good cause must necessarily be based upon more than a mere possibility that jury misconduct might have occurred").

In *Hooker v. State,* the appellate court stated that article 35.29's good-cause showing "must be based upon sworn testimony or other sufficient supportive evidence in the record." 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no

pet.); *see Valle,* 109 S.W.3d at 509 (stating that appellant's allegation "that he needed [the jurors'] personal information to determine whether he should file a motion for new trial . . . is not sufficient to establish good cause"), s*ee also Castellano v. State,* No. 04–06–00524–CR, 2007 WL 2935399, at *3 (Tex. App.—San Antonio Oct. 10, 2007, no pet.) (mem. op., not designated for publication) (holding that defendant had "reason to believe" juror misconduct had occurred was not sufficient to show good cause).

*Analysis*

In this case, appellant argued that he needed the juror information cards (1) to determine whether two jurors, who were not registered voters, were qualified to serve, and (2) to explore whether he could raise a *Batson* challenge. Regarding the first issue, the trial court properly noted, "There, of course, is no requirement that a Juror be a registered voter. So, there's only a requirement that a Juror be qualified and, in fact, expressly does not have to be registered[.]" *See* TEX. CODE CRIM. PROC. ANN. art. 33.02 (Vernon 2006) ("Failure to register to vote shall not disqualify any person from jury service."). There is nothing in the record to support appellant's assertion that the jurors "might" have been disqualified. Regarding the second issue, again, there is nothing in the record to support appellant's claim that he needed the cards "to determine if there was a basis for *Batson* challenge."

Appellant essentially argues that he needed the information cards "to present a motion for new trial to develop issues that were outside the record, namely, to determine if two people who served on the jury were qualified to serve, to review all the challenges for cause, and to determine if there was a basis for a *Batson* challenge." However, requesting juror cards to decide whether there is a basis for filing a motion for new trial is not a showing of good cause. *Valle,* 109 S.W.3d at 509.

Because appellant did not meet his burden of showing good cause to the trial court so as to be entitled to the juror information sought, the trial court did not abuse its discretion by denying appellant's request.

We overrule appellant's fourth point of error.

## CONCLUSION

We affirm the trial court's judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

Publish.   TEX. R. APP. P. 47.2(b).

16