

# NUMBER 13-22-00196-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOSE INES HERNANDEZ,                                                                  Appellant,

v.

THE STATE OF TEXAS,                                                                  Appellee.

### On appeal from the 396th District Court
### of Tarrant County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Tijerina

Appellant Jose Ines Hernandez was convicted of aggravated sexual assault of a child, a first-degree felony, and he was sentenced to forty-five years' confinement. *See* TEX. PENAL CODE ANN. § 21.02(b). By four issues, Hernandez contends that the trial court's charges to the jury were erroneous and harmful because the trial court: (1) instructed the jury to speculate to find him guilty; (2) allowed the jury to convict him of

both lesser-included offenses; (3) refused Hernandez's request to include an instruction that he would have to register as a sex offender; and (4) "erred in releasing the personal information of the jurors to the attorneys for the state." We affirm.[1]

## I. PERTINENT FACTS

The State indicted Hernandez for three offenses: continuous sexual abuse of a child under fourteen, aggravated sexual assault of a child, and indecency with a child.[2] At the conclusion of the guilt-innocence phase, the trial court granted the State's request to include in the jury charge aggravated sexual assault of a child and indecency with a child as lesser-included offenses of the greater offense of continuous sexual abuse of a child under fourteen. Thus, the jury should have been instructed that it must either find Hernandez guilty of the greater offense or one of the lesser-included offenses. However, the charge did not do so.

The trial court's jury charge also included the following:

> While you should consider only the evidence, you are permitted to draw such reasonable inferences from the testimony and exhibits as you feel are justified in the light of common experience. In other words, you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence.

The jury acquitted Hernandez of the greater offense of continuous sexual abuse of a child under fourteen. The jury found Hernandez guilty of both lesser-included offenses of aggravated sexual assault of a child and indecency with a child. The next day,

---

[1] This case was transferred from the Second Court of Appeals in Fort Worth, Texas pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] The State moved to waive counts two and three for the offenses of aggravated sexual assault of a child and indecency with a child. Instead, choosing to offer those offenses as lesser-included offenses of continuous sexual abuse of a child.

outside the jury's presence, the trial court announced,

> At the conclusion of the trial yesterday, the jury having found the defendant guilty of aggravated sexual assault and indecency with a child, based upon the way the Court submitted the charges to the jury in the Court's Charge, I believe that the finding of guilt on the indecency case is double jeopardy and would propose to—[in] the Court's opinion[,] I need to vacate that conviction.

The trial court informed the parties that it intended to "advise the jury that [it] was vacating that conviction but not give them the reason why . . . until after the end of the trial, and submit punishment to the jury only on the aggravated sexual assault of a child conviction which is the more serious conviction." The trial court asked if there were any objections, and both sides stated, "No," and announced ready for the jury.

Prior to the punishment phase of trial, the trial court told the jury that it had vacated its indecency with a child conviction and that the jury would be assessing punishment for the aggravated sexual assault of a child offense only. A hearing on punishment commenced. At the punishment charge conference, Hernandez requested that the trial court include an instruction informing the jury that he would have to register as a sex offender. The trial court denied that request. The jury heard the evidence on punishment and sentenced Hernandez to forty-five years' confinement for aggravated sexual assault of a child. *See id.* This appeal followed.

## II.    SPECULATION

By his first issue, although acknowledging that the instruction follows the Texas Jury Pattern Charge, Hernandez complains that the instruction stating that the jury could use "common sense" caused egregious harm because it improperly allowed or even "invited" the jury "to resolve the case on speculation." The State replies that the instruction

3

is proper and there is nothing in the record supporting a conclusion that the instruction caused the jury to speculate in this case.[3]

This complained-of instruction specifically states: "you may make deductions and reach conclusions that reason and common sense lead you to draw from the facts which have been established by the evidence." This instruction, as recognized by both sides, undisputedly tracks the instructions set forth in the Texas Pattern Jury Charges and is a correct statement of the law. *See Markwell v. State*, 641 S.W.3d 530, 533 (Tex. App.—Austin 2022, pet. ref'd) (citing Common Pattern Jury Charges, State Bar of Tex., *Texas Criminal Pattern Jury Charges: Instruction* CPJC 2.1). The complained-of instruction incorporates relevant statutory authority from the Texas Code of Criminal Procedure. *See id.* (citing TEX. CODE CRIM. PROC. ANN. arts. 36.13 ("Unless otherwise provided in this Code, the jury is the exclusive judge of the facts, but it is bound to receive the law from the court and be governed thereby."), 38.04 (providing, in relevant part, that "[t]he jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony")) (concluding that the same language incorporates Texas law and is not a comment on the weight of the evidence).

Moreover, "common sense" is defined as "sound and prudent judgment based on a simple perception of the situation or facts." *See Common Sense*, MERRIAM WEBSTER'S DICTIONARY, https://www.merriam-webster.com/dictionary/common%20sense, (last visited on March 8, 2023). Thus, we conclude that there is nothing about the use of the

---

[3] We note that, if no error occurred, we need not address harm. *See Tolbert v. State*, 306 S.W.3d 776, 779 (Tex. Crim. App. 2010) ("A finding that the trial court did not commit error precludes any harm analysis under *Almanza* [*v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)]." (citing *Posey v. State*, 966 S.W.2d 57, 61 (Tex. Crim. App. 1998))).

4

term "common sense" that conveyed to the jury that it should have speculated about the facts or Hernandez's guilt. Therefore, we are unpersuaded by Hernandez's contention that this instruction caused the jury to speculate about the facts or his guilt. We overrule Hernandez's first issue.

### III.     LESSER-INCLUDED OFFENSES

By his second issue, Hernandez contends that the trial court erroneously allowed the jury to find him guilty of both lesser-included offenses. The State concedes error but argues that Hernandez was not egregiously harmed because the trial court vacated the jury's guilty verdict for the offense of indecency with a child.

### A.     Applicable Law and Standard of Review

"For unpreserved charge error to be reversible, the error must have been so harmful that the defendant was denied a fair and impartial trial." *Ash v. State*, 930 S.W.2d 192, 195 (Tex. App.—Dallas 1996, no pet.) (first citing *Patrick v. State*, 906 S.W.2d 481, 492 (Tex. Crim. App. 1995); and then citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985)). The appellant must show that he has suffered actual "egregious" harm rather than theoretical harm. *Cosio v. State*, 353 S.W.3d 766, 777 (Tex. Crim. App. 2011). In determining whether the error was egregious, we must examine the following: (1) the charge itself; (2) the state of the evidence including contested issues; (3) argument of counsel; and (4) any other relevant information. *Ash*, 930 S.W.2d at 195 (first citing *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996); and then citing *Bailey v. State*, 867 S.W.2d 42, 43 (Tex. Crim. App. 1993)).

5

**B.    The Jury Charge Itself**

As we understand it, Hernandez complains that he suffered egregious harm because he theorizes that the jury considered the vacated indecency with a child offense when it sentenced him to forty-five years' confinement. Thus, we will examine the nature of the punishment charge first.

The punishment charge stated:

[Hernandez] has been found guilty by you of the offense of aggravated sexual assault of a child. Therefore, it now becomes your duty to determine the punishment to be assessed against [him].

The punishment range for the offense of aggravated sexual assault of a child is confinement in the Texas Department of Criminal Justice for life, or any term of not more than 99 years or less than 5.

The verdict form says: "We the jury, having found [Hernandez] guilty beyond a reasonable doubt of the offense of aggravated sexual assault of a child, assess his punishment at confinement" of forty-five years. The jury charge on punishment does not mention or refer to indecency with a child, and it does not set out that the jury should punish Hernandez for that offense.

Here, the trial court instructed the jury that it had found Hernandez guilty of aggravated sexual assault of a child and that it must assess his punishment for that offense, which has a range of punishment of life "or any term of not more than 99 years or less than 5." We must presume that the jury understood and followed the trial court's instructions unless the record indicates otherwise. *Taylor v. State*, 332 S.W.3d 483, 492 (Tex. Crim. App. 2011). Nothing in the record indicates that the jury did not understand or did not follow the trial court's instruction to set Hernandez's punishment solely for the

6

aggravated sexual assault of a child conviction. *See id.* Thus, we presume the jury did exactly what the trial court instructed. *See id.* Accordingly, this factor weighs against finding that the jury "increase[d] the sentence for the remaining conviction [of aggravated sexual assault of a child] to compensate for the vacated conviction" of indecency with a child and against a finding of egregious harm as Hernandez argues.

## C.      The State of the Evidence

We next consider the state of the evidence. Under this factor, we determine whether the evidence made it more or less likely that the charge error caused appellant actual harm. *Flores v. State*, 513 S.W.3d 146, 159 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd).

At trial, the complainant, L.C., a fifteen-year-old, testified that when she was five-years old, she lived with Hernandez and her mother. L.C. stated that Hernandez took care of her when her mother was at work. According to L.C., Hernandez "would pull down [her] pants," place his penis "between" her legs, and his penis touched her vagina. L.C. said that Hernandez performed this act "more than once." L.C. testified that Hernandez did the same thing to her on another occasion when she spent the night at a home belonging to Hernandez's brother. L.C. said that her mother and Hernandez ended their relationship when she was six, and on cross-examination, L.C. admitted that she did not know how many times the incidents occurred or the "period of time [that] these incidents were occurring."

C.E., L.C.'s mother, testified that when L.C. was eleven years old, L.C. told her that Hernandez "used to do things to her when she was little." Specifically, C.E. said that

L.C. told her that Hernandez "would put his [penis] in between her legs." L.C. reported, "That she would pretend to be asleep, she was scared, and he would pull down her pants and put her on her side." C.E. then took L.C. to the police station. On cross-examination, C.E. clarified that she and Hernandez lived together for "maybe five, six months."

Pamala Simmons, "a forensic nurse or a sexual assault nurse at Cook Children's Medical Center," testified that when she examined L.C., L.C. told her the following:

> [I]t started when I was five or six years old. I'm not sure that I remember the very first time. The first one I remember was at his brother's place where he lived. I would be asleep and he would come in there. That time he put me on the bed. My pants and underwear were off. He tried to put his thing in me down there. That's always what he did. Then after he was done, he would always tell me don't tell.
>
> One time I remember he was behind me. I was on my side and he was behind me. Whenever we were done, I'd pull my pants up. He would tell me don't tell and he'd walk away.
>
> It would happen like every two weeks for a while whenever my sister, his daughter lived with us. My mom and him broke up and we went to live with my grandmother and it stopped. It happened about four times before that.

At the punishment phase of trial, the State only called C.E. to testify. C.E. stated that L.C. had changed due to Hernandez's acts. Specifically, C.E. said, "She . . . went through a deep depression. She isolated herself a lot." C.E. testified that based on L.C.'s behavior at the time of the alleged acts "it all made sense," and L.C. was now in therapy, which according to C.E. has helped "a lot." C.E. stated that as a mother, she was responsible for protecting L.C., and she felt as if she had "failed" in that regard "[b]ecause [she] felt like [she] should have paid attention more" and "asked more questions."

Hernandez's theory of the case was that he was innocent of all the charged

8

offenses. The jury believed that Hernandez put his penis in L.C.'s vagina. *See* TEX. PENAL CODE ANN. § 22.021 (setting out the elements of aggravated assault). Further, the jury heard evidence that because of Hernandez's criminal acts, L.C. was not the same, had changed in that she wanted to be isolated "a lot" and now needed therapy, which had helped her. The jury also heard C.E. state that she felt inadequate as a mother.

A sentence of forty-five years for the offense of aggravated sexual assault of child is in the median of the possible sentencing range of aggravated sexual assault of a child. *See id.* § 12.32 (setting the punishment for a first-degree felony at between five years and ninety-nine years' to life confinement). Given the nature of the evidence that Hernandez put his penis inside L.C.'s vagina when she was five or six years old and that she suffered trauma and needed counseling, we are unable to conclude that this record supports a conclusion that the jury considered the indecency with a child offense when it sentenced Hernandez to forty-five years' confinement. *Cf. Stavinoha*, 808 S.W.2d 76, 79 (Tex. Crim. App. 1991) ("Likewise, we believe a jury could rationally hold appellant morally accountable for the psychological trauma to both complainant and his mother, and for the consequences of that trauma."). We conclude the state of the evidence made it less likely that the jury charge caused appellant actual harm. Consequently, this factor weighs against finding egregious harm.

**D.     Argument of Counsel**

Next, we consider the arguments or statements made by the State, appellant, or the trial court. *Arrington v. State*, 451 S.W.3d 834, 844 (Tex. Crim. App. 2015). "Under this factor, we look to whether any statements made by the State, appellant, or the court

during the trial exacerbated or ameliorated error in the charge." *Id.*

Hernandez argued in pertinent part that

As far as the punishment in this case, I don't know what the State's going to ask for. They may ask you for 99 years or life. I don't know. They asked you to consider convicting him of continuous sexual abuse of a child and you deliberated and found that that was not true. So you did what you thought was right and found him guilty of another offense that we're here about now, which is aggravated sexual assault of a child. It's a very serious offense, obviously.

But I'm going to ask you to think about whether or not a sentence in the neighborhood of five to ten years, like even [Hernandez's] brother said, or whatever number you think is right. If it's in that range or whatever you think is appropriate for this case to end, for the punishment of [Hernandez].

The State argued, in pertinent part, as follows:

You have to decide in that range of punishment what he deserves. And one act of aggravated sexual assault of a child, one single time earns you five years up to 99 years or life. And he did this over and over and over to her. This is not a minimum case. He deserves much more than that.

Because he gave [L.C.] a life sentence. She will deal with this. Hopefully, we're hoping for her sake that she does heal and she is able to cope with this the best she can. We want that for her, and it's possible that she comes out of this and makes progress.

Hernandez and the State both argued that the jury needed to sentence Hernandez for the offense of aggravated sexual assault of a child within the applicable range of punishment. Neither party mentioned indecency with a child during closing argument. Thus, we conclude that this factor weighs against finding that the jury sentenced Hernandez for the indecency with a child offense and against finding egregious harm in that regard.

### E.      Any Other Relevant Information

To the extent Hernandez may complain that he suffered egregious harm because

10

the jury found him guilty of both offenses, the proper remedy for a double jeopardy violation is to vacate the offense that would receive the lesser punishment. *See Evans v. State*, 299 S.W.3d 138, 141 (Tex. Crim. App. 2009) ("The remedy for impermissible multiple convictions and punishments is to retain the most serious offense and vacate the other(s)."). Here, the trial court vacated the indecency with a child offense and only sent the aggravated sexual assault charge to the jury for punishment. *See id.* And as previously set out, the charge instructed the jury to follow the range of punishment for the aggravated sexual assault of a child offense. Therefore, we are unable to conclude that Hernandez suffered egregious harm because the trial court cured its error when it vacated the indecency with a child conviction and only sent the aggravated sexual assault of a child conviction to the jury for punishment. *See id.* We overrule Hernandez's second issue.

## IV.    REGISTRATION AS A SEX OFFENDER

By his third issue, Hernandez argues that "the trial court erred in the punishment charge when it refused to instruct the jurors that [Hernandez] would be placed on the sex offender registry for life after release," which was "harmful because the charge included factors such as parole and (erroneously) good time." The State responds that sex offender registration is not a punishment issue. *See Rodriguez v. State*, 93 S.W.3d 60, 79 (Tex. Crim. App. 2002). We agree with the State.

The Texas sex-offender registration statute is civil and remedial in nature, and it does not serve as a criminal sanction. *Id.* Moreover, the transferor court, the Fort Worth Court of Appeals, has already determined that sex offender registration is "a collateral

11

matter to the issue of how long a sentence and how large a fine the jury should impose," and "[t]he trial court did not err in refusing to include" an instruction concerning the appellant's requirement to register as a sex offender." *See Barker v. State*, No. 2-01-258-CR, 2003 WL 21513617, at *4 (Tex. App.—Fort Worth July 3, 2003, pet. ref'd) (mem. op., not designated for publication). Although not published, *see* TEX. R. APP. P. 47.7(a), we find *Barker v. State*, persuasive, and we conclude that the trial court here did not err in refusing to give the jury an instruction regarding the sex offender registration requirement because it is a collateral matter. *See* Rodriguez, 93 S.W.3d at 79; *Barker*, 2003 WL 21513617, at *4; *see also Mariana-Rivera v. State*, No. 13-17-00136-CR, 2018 WL 3583576, at *3 (Tex. App.—Corpus Christi–Edinburg July 26, 2018, pet. ref'd) (mem. op., not designated for publication) (citing Texas Rule of Appellate Procedure 47.7(a), which made the unpublished criminal case lack precedential value and determining that although the case is unpublished it was persuasive). We overrule Hernandez's third issue.

## V.    THE JURORS' PERSONAL INFORMATION

By his fourth issue, Hernandez contends that "the trial court erred in releasing the personal information of the jurors to the attorneys for the [S]tate." Specifically, Hernandez argues that pursuant to Article 35.29, the State was required to show "good cause" to be entitled to the jurors' names and addresses post trial; thus, the trial court abused its discretion when it provided that information to the State. *See* TEX. CODE CRIM. PROC. ANN. art. 35.29 (setting out that although generally the trial court may not release the jurors' personal information including their addresses, "the court shall [do so], on a showing of good cause" by a party). The State responds that Hernandez has not shown that he was

12

harmed by the trial court's error, if any.

## A.    Pertinent Facts

After Hernandez's trial ended, the State filed a motion in the trial court stating:

> COMES NOW, THE STATE OF TEXAS, in the above styled and numbered cause, pursuant to Article 35.29 of the Texas Code of Criminal Procedure, and request a copy of the jury list with addresses in said cause to be released to the prosecution. Good cause exists for the requests of this information in that the [S]tate intends to use this information for the legitimate purpose of sending out jury letters to inform Jurors of possible-post-trial remedies and their rights concerning those remedies. WHEREFORE PREMISES CONSIDERED, the [S]tate prays this motion in all things be granted.

The trial court granted the motion.

## B.    Applicable Law

Texas Code of Criminal Procedure article 35.29 protects personal information about jurors, by the forbidding of disclosure of the jurors' information absent a showing of good cause by a party in the trial or a bona fide member of the news media. *See* TEX. CODE CRIM. PROC. ANN. art. 35.29; *Romero v. State*, 396 S.W.3d 136, 150 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see also Johnson v. State*, No. 02-19-00194-CR, 2020 WL 1057309, at *7 (Tex. App.—Fort Worth Mar. 5, 2020, no pet.) (mem. op., not designated for publication) (concluding that the trial court abused its discretion by granting the State's post-trial motion for release of the jurors' personal information pursuant to article 35.29 because good cause not shown); *Onick v. State*, No. 02-18-00356-CR, 2019 WL 1950063, at *5 (Tex. App.—Fort Worth May 2, 2019, no pet.) (mem. op., not designated for publication). We review the trial court's release of the jurors' personal information for an abuse of discretion. *See Romero*, 396 S.W.3d at 153 (concluding no

13

abuse of discretion by not releasing jurors' personal information because requesting party did not establish good cause). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, or it acts in an arbitrary or capricious manner. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). A trial court does not abuse its discretion if its ruling is at least within the zone of reasonable disagreement. *Id.* at 391; *Taylor v. State*, 461 S.W.3d 223, 230 (Tex. App.—Houston [1st Dist.] 2015, pet. ref'd).

To be entitled to the jurors' personal information, the State must show good cause. *See Taylor*, 461 S.W.3d at 231. Absent a showing of good cause, the trial court abuses its discretion by ordering the jurors' confidential information released. *Hooker v. State*, 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no pet.). Good cause must be based on sworn testimony or other sufficient supportive evidence in the record. *See id.* When the trial court abuses its discretion by providing the jurors' personal information to the State, the error is not reversible unless the error affected the defendant's substantial rights. *See* TEX. R. APP. P. 44.2(b); *see also Johnson*, 2020 WL 1057309, at *7; *Onick*, 2019 WL 1950063, at *6.

## C.    Discussion

In two unpublished cases, the Fort Worth Court of Appeals has determined that the trial court abused its discretion by releasing the jurors' personal information to the State pursuant to 35.29 when the State failed to show good cause through a sworn motion or other supportive evidence in the record. *See Johnson*, 2020 WL 1057309, at *7; *Onick*, 2019 WL 1950063, at *6. In both cases, the State filed an unsworn motion without seeking

14

an evidentiary hearing and without offering any evidence to support its bald assertion that "good cause" existed. *See Johnson*, 2020 WL 1057309, at *7; *Onick*, 2019 WL 1950063, at *6.

Here, the State filed a motion to release juror information stating, "Good cause exists for the request of this information in that the State intends to use this information for the legitimate purpose of sending out jury letters to inform Jurors of *possible* post-trial remedies and their rights concerning those remedies." (Emphasis added). The mere possibility that an event will occur is not sufficient to support a claim of good cause. *See Taylor*, 461 S.W.3d at 231 (concluding that the claim that juror information was necessary "to decide whether there is a basis for filing a motion for new trial is not a showing of good cause"); *see also Johnson*, 2020 WL 1057309, at *7; *Onick*, 2019 WL 1950063, at *6. Moreover, as in *Johnson* and *Onick*, in its unsworn motion, the State used the exact same language that the Fort Worth Court of Appeals has found insufficient to provide a basis for finding good cause because the State did not provide supporting evidence. *See Taylor*, 461 S.W.3d at 231; *see also Johnson*, 2020 WL 1057309, at *7 ("The State candidly admits that its motion in this case was essentially identical to, and suffered from the same deficiencies as, the one we found wanting in *Onick*."); *Onick*, 2019 WL 1950063, at *6 ("We agree with Appellant that the State's unsworn motion, without any supporting evidence, in which the State asserted without specificity that it needed the jurors' information in order to send out letters regarding 'possible' post-trial remedies and associated rights, does not constitute good cause.").

15

The reasoning in *Johnson* and *Onick* convince us that the trial court abused its discretion by providing to the State the jurors' personal information without good cause. *See Taylor*, 461 S.W.3d at 231; *see also Johnson*, 2020 WL 1057309, at *7; *Onick*, 2019 WL 1950063, at *6. Furthermore, like in *Onick*, Hernandez sets forth no showing of how he has been harmed or how his substantive rights have been affected by the alleged error. *See* TEX. R. APP. P. 44.2(b); *Onick*, 2019 WL 1950063, at *6 ("Indeed, Appellant had already been convicted and his punishment assessed at the time the trial court signed the order."). Instead, Hernandez states that we should not apply a harm analysis under these circumstances and that we should reverse the conviction because (1) "the district court judges, and the assistant district attorneys, have been told that the use of this form is improper," (2) Texas Rule of Evidence 606 "places serious restrictions on the use of juror testimony," and (3) Rule 3.06(d) of the Texas Rules of Disciplinary Conduct requires the attorneys to know the rules of evidence. Thus, Hernandez requests that we conclude that the State's request and the trial court's grant of a request for juror information without a showing of good cause will result in automatic reversal. We decline Hernandez's invitation. Accordingly, we conclude that Hernandez has not shown that he was harmed by the trial court's error.[4]  *See* TEX. R. APP. P. 44.2(b); *Johnson*, 2020 WL 1057309, at *7 (concluding that the trial court's erroneous order releasing the jurors' information to the State did not affect the verdict and the court was left with a fair assurance that the decision did not influence the jury because the record reflected that the all proceedings of the

---

[4] Hernandez does not dispute that the trial court signed the order releasing the jurors' information after it discharged the jury.

16

appellant's trial had ended and the jury had been discharged when the trial court granted the State's motion); *Onick*, 2019 WL 1950063, at *6. We overrule Hernandez's fourth issue.

## VI. CONCLUSION

We affirm the trial court's judgment.

JAIME TIJERINA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed on the
30th day of March, 2023.