

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00190-CR
No. 02-22-00191-CR
No. 02-22-00192-CR
No. 02-22-00193-CR

_____

TARHE EUGENE BROWN, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court Nos. 1677437D, 1686716D, 1686828D, 1687152D

Before Womack, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

### I. INTRODUCTION[1]

Appellant Tarhe Eugene Brown was twenty-one years old when he used Instagram, a commercial online service, to contact fourteen-year-old B.A.[2] in October 2020 and her sister, fifteen-year-old A.A., in December 2020 or January 2021. Brown told B.A. that he was seventeen, and she told him that she was fourteen. Brown developed a sexual relationship with both sisters, *see* Tex. Penal Code Ann. § 22.011(a) (sexual assault of a child), and he and B.A. exchanged sexually explicit messages using Instagram to describe sex acts they had performed on each other and that they planned to perform together in the future. *See id.* § 33.021 (online solicitation of a minor). Brown also used his cell phone to take video of some sexual acts with B.A., including his grasping B.A.'s breast and putting his penis against her lips. *See id.* § 21.11 (indecency with a child by contact), § 22.011(a)(2)(E) (sexual assault of a child by causing the child's mouth to contact the actor's sexual organ).

---

[1]We include a brief factual recitation here to contextualize Brown's arguments because he does not challenge the sufficiency of the evidence to support his convictions.

[2]We use initials to protect the complainants' identities. *See* Tex. R. App. P. 9.10(a)(3); 2d Tex. App. (Fort Worth) Loc. R. 7.

A.A. ended her relationship with Brown when she discovered his relationship with B.A., although Brown continued to contact A.A. When Brown contacted her, A.A. would send a screenshot[3] of the message to B.A.'s phone.

On March 9, 2021, Brown contacted A.A. and told her that he needed to see her. She ultimately agreed to go to Dallas with him to meet someone, but when they arrived, no one was there, and he tried to initiate intimate contact with her. When she refused, he threw her on the ground, pulled down her pants, strangled her, and anally raped her. *See id.* § 22.021 (aggravated sexual assault of a child). He used her thumbprint to access her phone and delete their messages and call logs and then drove her home. A.A.'s location detector on her phone and global positioning information from Brown's ankle monitor[4] corroborated A.A.'s testimony about the assault's time and place, and Brown's DNA was detected on A.A.'s neck swab taken by a forensic nurse a few hours after the assault.

After the assault, A.A.'s face was so swollen from strangulation that she could barely open her eyes or talk. The jury viewed photographs of her injuries. A.A. had lost control of her bladder during the assault, and the forensic nurse observed that this tended to occur "when patients have a near-death experience."

---

[3]A "screenshot" is an "image that shows the contents of a computer display." https://www.merriam-webster.com/dictionary/screenshot (last visited July 17, 2023).

[4]During the trial's punishment phase, two other young women testified about Brown's attempted sexual assaults on them that had led to his wearing the ankle monitor that placed him with A.A.

The ensuing criminal investigation led to Brown's charges: one count of aggravated sexual assault of a child (A.A.),[5] three counts of sexual assault of a child (B.A.), three counts of indecency with a child (B.A.),[6] one count of sexual assault of a child (A.A.),[7] and one count of online solicitation of a minor (B.A.).[8] Brown pleaded

[5]The indictment in trial court cause number 1677437D (appellate cause number 02-22-00190-CR) alleged that on or about March 9, 2021, Brown intentionally or knowingly caused his sexual organ to penetrate the anus of A.A., a child younger than 17 at the time of the offense, and that he, by acts or words, threatened to cause or placed A.A. in fear that death or serious bodily injury would be imminently inflicted upon her.

[6]The indictment in trial court cause number 1686716D (appellate cause number 02-22-00191-CR) contained three sexual-assault counts, alleging that on or about January 2, 2021, regardless of whether he knew B.A.'s age at the time of the offense, Brown had intentionally or knowingly (1) caused his sexual organ to contact the female sexual organ of B.A., a child younger than 17; (2) caused his mouth to contact B.A.'s female sexual organ; and (3) caused his sexual organ to contact B.A.'s mouth. It also contained three indecency-with-a-child counts, alleging that on or about January 2, 2021, Brown had intentionally, with the intent to arouse or gratify the sexual desire of any person, and regardless of whether he knew B.A.'s age at the time of the offense (1) engaged in sexual contact by touching any part of the genitals of B.A., a child younger than 17; (2) caused B.A. to engage in sexual contact by causing her to touch any part of his genitals; and (3) engaged in sexual contact by touching any part of B.A.'s breast.

[7]The indictment in trial court cause number 1686828D (appellate cause number 02-22-00192-CR) alleged that on or about December 1, 2020, Brown intentionally or knowingly caused his sexual organ to contact the sexual organ of A.A., a child younger than 17, regardless of whether Brown knew her age at the time of the offense.

[8]The indictment in trial court cause number 1687152D (appellate cause number 02-22-00193-CR) alleged that on or about October 25, 2020, through November 22, 2020, Brown had used the internet, e-mail, text, other electronic message service or system, or commercial online service to knowingly solicit a minor, B.A., to meet another person, including himself, with the intent that she would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him.

4

not guilty to all of the charges, but after a four-day trial, followed by twenty-nine minutes of deliberation, the jury found him guilty of all charges. The jury assessed the maximum punishment for each offense, and the trial court sentenced Brown accordingly and entered judgment on those verdicts.[9]

In his first three issues, Brown complains that the trial court erred by failing to include more than a general unanimity statement in the sexual-assault and indecency jury charges involving B.A. and that he was subjected to multiple punishments in violation of Double Jeopardy regarding the sexual-assault and indecency charges as to B.A. and the aggravated-sexual-assault and sexual-assault charges as to A.A. In his fourth issue, he argues that the trial court erred by granting the State's motion to release personal juror information.

We affirm the trial court's judgments because the aggravated-sexual-assault and sexual-assault jury charges as to A.A. and sexual-assault and indecency jury charges as to B.A. did not subject Brown to multiple punishments and because Brown has failed to show egregious harm from the trial court's unobjected-to failure to include more than a general unanimity instruction in the sexual-assault and indecency jury charges

---

[9]Brown received a life sentence for aggravated sexual assault of a child. *See* Tex. Penal Code Ann. § 12.32 (stating first-degree-felony confinement range of five to ninety-nine years or life). He received a twenty-year sentence for each of the six counts in trial court cause number 1686716D involving B.A. and for the sexual assault of A.A. in trial court cause number 1686828D. *See id.* § 12.33 (stating second-degree-felony confinement range of two to twenty years). And he received a ten-year sentence for the online-solicitation-of-a-minor offense. *See id.* § 12.34 (stating third-degree-felony confinement range of two to ten years).

as to B.A. and has failed to show harm from the trial court's granting of the State's motion to release personal juror information.

## II. DISCUSSION

We will begin our discussion with Brown's Double-Jeopardy complaint in his third issue, followed by his unanimity complaints in his first and second issues, and finally his fourth issue as to the State's juror-information motion.

### A. Jury charge standard of review

We must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). In reviewing a jury charge, we first determine whether error occurred; if not, our analysis ends. *Id.*

### B. Double jeopardy

In his third issue, Brown argues that the jury charges on the aggravated-sexual-assault and sexual-assault counts as to A.A. and the sexual-assault and indecency counts as to B.A. resulted in his receiving multiple punishments for the same offense.[10] Brown did not make a Double-Jeopardy objection in the trial court. A defendant may forfeit a potential Double-Jeopardy violation by not asserting it in the trial court. *Langs*, 183 S.W.3d at 686–87. But he may raise a Double-Jeopardy claim

---

[10]There are three types of Double-Jeopardy claims: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense. *Ramos v. State*, 636 S.W.3d 646, 651 (Tex. Crim. App. 2021); *Langs v. State*, 183 S.W.3d 680, 685 (Tex. Crim. App. 2006).

6

for the first time on appeal "when the undisputed facts show the [D]ouble [J]eopardy violation is clearly apparent on the face of the record and when enforcement of [the] usual rules of procedural default serves no legitimate state interests." *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex. Crim. App. 2000).

### 1. Multiple punishments

A multiple-punishments claim can arise in two contexts: (1) the lesser-included-offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X); and (2) punishing the same criminal act twice under two distinct statutes when the legislature intended the conduct to be punished only once (for example, causing a single death by committing both intoxication manslaughter and involuntary manslaughter). *Langs*, 183 S.W.3d at 685. If, as pleaded, the offenses each have at least one element the other does not, and if, according to the relevant statutory provisions, the legislature's intent to punish both offenses as one is not clear, then separate convictions and punishments for each offense do not violate the prohibition against Double Jeopardy. *Philmon v. State*, 609 S.W.3d 532, 536 (Tex. Crim. App. 2020); *see Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 182 (1932). A Double-Jeopardy violation occurs if one is convicted or punished for two offenses

that are the same both in law and in fact. *Aekins v. State*, 447 S.W.3d 270, 279 (Tex. Crim. App. 2014).[11]

## 2. Aggravated sexual assault and sexual assault of A.A.

In part of his third issue, Brown argues that "there is no evidence of what acts the jury relied on to convict [him] for the sexual assaults" involving A.A. and that the jury should have been instructed that it could not use the same act to convict him for both offenses.[12]  But in conducting the same-elements analysis, we look only to the pleadings and relevant statutory provisions, not the evidence presented at trial.[13] *Nawaz v. State*, 663 S.W.3d 739, 744 (Tex. Crim. App. 2022).

---

[11]For purposes of the multiple-punishments analysis, *Blockburger* is just a tool, "not the be all, end all, of statutory construction."  *Aekins*, 447 S.W.3d at 277. Sometimes two offenses that are the "same" may both be punished; sometimes two "different" offenses may not both be punished.  *Id.*  It all depends on the legislature's intent. *Id.*

[12]In part of this argument, Brown also appears to confuse the offenses against B.A. with the offenses against A.A., stating, "Here the jury convicted Appellant of Aggravated Sexual Assault of A.A. . . . and Indecency with A.A. . . .  The jury was never told that it could not use the act that served as the basis for the Aggravated Sexual Assault to convict Appellant of Indecency—or the reverse."  However, Brown was neither charged with nor convicted of committing indecency offenses with A.A.

[13]We nonetheless note that the evidence was ample to support both convictions:  Brown was alleged to have committed the sexual assault of A.A. on or around December 1, 2020, when he intentionally or knowingly caused his sexual organ to contact her sexual organ, and A.A. testified that when she met Brown in December 2020 or January 2021, they engaged in vaginal sexual intercourse three or four times before she discovered his sexual relationship with B.A.  Brown was also alleged to have committed the aggravated sexual assault of A.A. on or around March 9, 2021, when he intentionally or knowingly caused his sexual organ to penetrate her anus and by acts or words, threatened to cause or placed A.A. in fear that death or serious bodily injury would be imminently inflicted upon her.  As set out

8

As charged in the indictment here, aggravated sexual assault occurs when a person intentionally or knowingly causes the penetration of a child's anus and by acts or words places the child in fear that death or serious bodily injury will be imminently inflicted upon her. Tex. Penal Code Ann. § 22.021(a)(1)(B)(i), (a)(2)(A)(ii). As charged in the indictment here, sexual assault occurs when a person intentionally or knowingly causes his sexual organ to contact a child's sexual organ. *Id.* § 22.011(a)(2)(C).

The Court of Criminal Appeals has stated that the specificity in a conduct-oriented statute—specifically Penal Code Section 22.021—"ordinarily reflects a legislative intent that each discretely defined act should constitute a discrete offense." *Gonzales v. State*, 304 S.W.3d 838, 849 (Tex. Crim. App. 2010). That is, penetration of the anus constitutes a discrete act from penetration of the sexual organ, and the fact that both may be anatomically located in the "genital area" does not render the separate acts of penetration the "same" offense for Double-Jeopardy purposes. *Id.* In *Gonzales*, the appellant had been charged with and convicted of two counts of aggravated sexual assault of a child arising from a single incident during which he penetrated the victim's anus and then her vagina. *Id.* at 840. The court concluded that there was no Double-Jeopardy violation when the appellant was convicted under both counts because the legislature "intended that penetration of a child's anus should

in our introduction, the evidence showed that on March 9, 2021, Brown anally raped A.A. and strangled her.

9

be regarded as a distinct offense from penetration of her sexual organ even if they occur during the course of the same incident or transaction." *Id.* at 849. Here, the argument for Double Jeopardy is even weaker because the two offenses occurred in separate events.

Because the Court of Criminal Appeals has determined that the aggravated-sexual-assault statute contemplates separate convictions for penetration of the sexual organ and penetration of the anus, and the legislature has used the same language in the sexual-assault statute, Brown was not subjected to a Double-Jeopardy violation as to his sexual assault of A.A. and his subsequent aggravated sexual assault of her. *See id.*; *see also Gonzalez v. State*, 337 S.W.3d 473, 482 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (concluding that the Court of Criminal Appeals's analysis under Section 22.021 "compels the same conclusion in the statute pertaining to sexual assaults" under Section 22.011). Because there is no Double-Jeopardy violation apparent on the face of this record, *see Langs*, 183 S.W.3d at 686–87; *Gonzalez*, 8 S.W.3d at 643, we overrule this portion of Brown's third issue.

### 3. Sexual assault of and indecency with B.A.

Brown also argues that the trial court erred by failing to instruct the jury not to convict him for both sexual assault and indecency involving B.A. based on the same acts.[14]

---

[14]Although the State concedes that indecency by contact is a lesser-included offense of sexual assault and invites us to vacate all three of the indecency convictions, we are not bound by the State's concessions. *See Oliva v. State*,

10

Sex offenses focus on the prohibited conduct, and the legislature intended punishment for each prohibited act. *Hernandez v. State*, 631 S.W.3d 120, 124 (Tex. Crim. App. 2021). The allowable unit of prosecution for indecency with a child is sexual contact, and touching the breast, touching the anus, and touching the genitals are all distinct offenses. *Id.* Separate acts of contact and penetration may also be separate offenses. *Id.* (noting, "[i[n short, different body parts mean different crimes"). *Cf. Evans v. State*, 299 S.W.3d 138, 140 n.3, 142–43 (Tex. Crim. App. 2009) (holding that convictions for indecency by contact and sexual assault of a child violated Double Jeopardy when both were predicated on the same act and body part). For example, an allegation that a defendant penetrated a child's mouth with his penis does not include claims that he touched the child's torso with his penis or touched her vagina with his hand—although these are lesser offenses, they are not included because "they are separate crimes for which the defendant could be prosecuted in addition to the greater, charged offense." *Hernandez*, 631 S.W.3d at 122.

The Court of Criminal Appeals has stated that, "[i]n a line of cases addressing [D]ouble-[J]eopardy and jury-unanimity issues in sexual-assault cases, we have concluded that the Texas Legislature's intent is to punish each discrete assault." *Aekins*, 447 S.W.3d at 277–78. That is, separate criminal acts committed during a single sexual encounter may be punished separately, but a criminal act (such as

---

548 S.W.3d 518, 520 (Tex. Crim. App. 2018) ("We, of course, are not bound by any agreement or concessions by the parties on an issue of law.").

11

exposure or contact) that is committed as *part* of a continuing sexual assault and that results in one complete, ultimate act of penetration may not be punished along with that complete, ultimate act. *Id.* at 278 ("Steps along the way to one rape merge into the completed act."). "The key is that one act ends before another begins. The defendant might touch a child's breast; then he touches her genitals. Two separate acts, two separate impulses, two separate crimes." *Id.*

If, however, a continuing act results in a completed sexual assault by penile penetration, which almost always consists of exposing the penis en route to contacting the vagina (or anus or mouth) with the penis, en route to penetration of the same with the penis, while that one continuing act may violate three separate Penal Code provisions, because the legislature intended only one conviction for that one completed sexual assault, multiple convictions for that one complete, ultimate sexual assault violate the Double Jeopardy Clause. *Id.* at 279. Stated another way, "[w]here two crimes are such that the one cannot be committed without necessarily committing the other, then they stand in the relationship of greater and lesser offenses, and the defendant cannot be convicted or punished for both." *Id.* at 280. "[I]n Texas, . . . a defendant may not be convicted for a completed sexual assault by penetration and also for conduct (such as exposure or contact) that is demonstrably and inextricably part of that single sexual assault." *Id.* at 281. However, if an indecent contact is not simply preparatory to an act of penetration, the contact is itself a complete, ultimate act. *Id.* at 282. As to indecency, the commission of each prohibited act determines

how many convictions may be had for a particular course of conduct. *Loving v. State*, 401 S.W.3d 642, 649 (Tex. Crim. App. 2013).

Here, three counts of sexual assault (counts 1–3) alleged that Brown (1) intentionally or knowingly caused his sexual organ to contact B.A.'s female sexual organ; (2) intentionally or knowingly caused his mouth to contact B.A.'s female sexual organ; and (3) intentionally or knowingly caused his sexual organ to contact B.A.'s mouth. Three counts of indecency with a child by contact (counts 4–6) alleged that Brown intentionally, with the intent to arouse or gratify the sexual desire of any person: (4) engaged in sexual contact by touching any part of B.A.'s genitals; (5) caused B.A. to engage in sexual contact by causing her to touch any part of his genitals; and (6) engaged in sexual contact by touching any part of B.A.'s breast.

Brown's act of indecency by touching B.A.'s breast, which is not an element of any of the sexual-assault charges, clearly stands alone as a separate offense and conviction. The two remaining indecency charges could be viewed as listing intermediate contact that could have occurred before a completed offense, i.e., Brown's touching B.A.'s genitals before the completed penis-to-vagina or mouth-to-vagina contact and B.A.'s touching Brown's genitals before the completed penis-to-mouth contact. *See Aekins*, 447 S.W.3d at 283 (explaining that two convictions, based on a hypertechnical division of what is essentially a single continuous act, are barred by the Double Jeopardy Clause). But the record also reflects evidence of five months of sexual abuse of B.A. by Brown involving all of these activities on multiple

13

occasions, which would have allowed the jury to convict Brown for each count of indecency and each count of sexual assault without violating the Double Jeopardy Clause. *Compare Evans*, 299 S.W.3d at 143 ("The language in the indictment is sufficient to show that indecency with a child is a lesser-included offense of aggravated sexual assault of a child in the present case."),[15] *with Maldonado v. State*, 461 S.W.3d 144, 149–50 (Tex. Crim. App. 2015) (noting distinction in cases where jury is presented with evidence of multiple instances of conduct involving different acts at different times over a span of many years as compared to cases where improper sexual touching is not separate from penetration). Because there is no clear Double Jeopardy violation on the face of the record, *see Langs*, 183 S.W.3d at 686–87; *Gonzalez*, 8 S.W.3d at 643, we overrule the remainder of Brown's third issue.

## C. Unanimity

In his first issue, Brown argues that the trial court erred by failing to require the jury to unanimously agree on the offenses that provided the basis for his sexual-assault convictions as to B.A. In his second issue, he complains that the trial court likewise erred by failing to require the jury to reach a unanimous verdict on the indecency allegations as to B.A.

---

[15]In *Evans*, the Court of Criminal Appeals addressed a two-count indictment that charged the appellant with aggravated sexual assault of a child and indecency with a child by contact committed against the same victim on the same date. 299 S.W.3d at 140. The court observed that indecency is a lesser-included offense of aggravated sexual assault of child when both offenses are predicated on the same act. *Id.* at 143.

Texas law requires that a jury reach a unanimous verdict about the specific crime that the defendant committed. *Cosio v. State*, 353 S.W.3d 766, 771 (Tex. Crim. App. 2011). Guaranteeing unanimity is ultimately the trial court's responsibility because it must instruct the jury on the law applicable to the case. *Id.* at 776.

When a defendant is charged with multiple counts of sexual offenses that each allege the same on-or-about date, the jury must "agree upon a single and discrete incident that would constitute the commission of the offense alleged" because non-unanimous verdicts may arise when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions. *Id.* at 771–72. Under those circumstances, each of the multiple incidents individually would establish a different offense or unit of prosecution, requiring the charge to instruct the jury that its verdict must be unanimous as to a single offense or unit of prosecution among those presented. *Id.* at 772. The failure to include such an instruction, if unobjected-to, must be reviewed for egregious harm. *Id.* at 777. Under the circumstances presented in *Cosio*, the court found charge error but concluded that there was no actual egregious harm because of the child's detailed testimony and the jury's failure to acquit the defendant on his theory that the child was not credible. *Id.* at 777–78.[16]

---

[16]In *Cosio*, the child testified about four specific instances that involved multiple instances of touching breasts and genitals and penetration, but each jury charge merely included a general instruction at the end that the verdict must be unanimous. 353 S.W.3d at 770, 772. The jury found the appellant guilty of all counts. *Id.* at 770. The charges allowed the possibility that the jury had rendered non-unanimous

15

Here, because the State presented evidence that Brown had committed a variety of sexual acts with B.A. on multiple but separate occasions, the trial court erred by failing to include a more specific unanimity instruction in the sexual-assault and indecency jury charges. *See id.* at 776. Because Brown did not raise this objection at trial, we apply the egregious-harm standard to this error. *See id.* at 777; *see also Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas v. State*, 398 S.W.3d 703, 708–10 (Tex. Crim. App. 2013) (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor v. State*, 332 S.W.3d 483, 490 (Tex. Crim.

---

verdicts, and the standard, perfunctory unanimity instruction at the end of each charge did not rectify the error. *Id.* at 774 ("The jury may have believed that it had to be unanimous about the offenses, not the criminal conduct constituting the offenses."). Further, the evidence "failed to differentiate between the similar, but yet separate, incidents of criminal conduct in relation to the offenses as charged and the alleged on or about dates." *Id.* The court held that, in this situation, the jury should be instructed that it had to unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that met all the essential elements of the single charged offense beyond a reasonable doubt. *Id.* at 776.

16

App. 2011) (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

### 1. Jury charge

The jury charge in cause number 1686716D defined the offense of sexual assault as the defendant's intentionally or knowingly (1) causing the sexual organ of a child to contact the mouth or sexual organ of another person or (2) causing the mouth of the child to contact the sexual organ of another person. It defined the offense of indecency with a child as engaging in sexual contact with a child or causing a child to engage in sexual contact, with the intent to arouse or gratify the sexual desire of any person.

The charge instructed the jury that the State was not required to prove the exact date alleged in the indictment but could prove the offense to have been committed at any time prior to the presentment of the indictment and before expiration of limitations, of which there was none for the offenses, and that if there was evidence of acts other than those charged in the indictment by Brown against B.A., "said evidence, if any, is admitted solely to assist [the jury], if it does," in determining Brown's and B.A.'s state of mind or to assist the jury in understanding, "if it does, the previous or subsequent relationship between" Brown and B.A. "and for those purposes only." It also informed the jury that the State had the burden to

17

prove Brown guilty "by proving each and every element of the offense charged beyond a reasonable doubt."

The application paragraphs identified the specific offenses. The charge stated, "Your verdict must be by a unanimous vote of all members of the jury." It also addressed the presiding juror's responsibility to certify the verdict on the appropriate form after the jurors had "unanimously agreed upon a verdict" and how to communicate with the court after reaching "a unanimous verdict." Each count received its own form upon which the jury found Brown guilty "as charged in" the pertinent count of the indictment.

The lack of a specific unanimity instruction weighs in favor of harm. *See Cosio*, 353 S.W.3d at 776–77.

### 2. State of the evidence

B.A. testified that she and Brown began engaging in vaginal sexual intercourse in early-to-mid November 2020, on many occasions, and continued to do so until his assault on A.A. in March 2021. B.A. stated that she and Brown also engaged in multiple instances of mouth-to-penis contact, mouth-to-vagina contact, breast contact, and hand-to-penis contact. B.A. testified that the first time she and Brown engaged in any sexual activity was in his car in a park and that a soccer field was another place where they engaged in sexual intercourse. B.A.'s report to the forensic nurse indicated that, beginning in October 2020, and ending a month and a half before the April 20, 2021 exam, she and Brown engaged in multiple occurrences of

18

penile-vaginal contact and penetration, as well as digital penetration of her vagina, contact between her hand and his penis, and contact between her mouth and his penis and his mouth and her vagina.

The State seized Brown's and B.A.'s cell phones and extracted the phones' contents. B.A.'s communications with Brown were around 2,000 pages. The cell-phone extractions showed that B.A. and Brown had exchanged messages on Instagram about their past and future sexual activities and that they began communicating on October 22, 2020. Three days later, B.A. left her brassiere in Brown's car and told Brown, "[For real] had yo dick all up in my stomach."

Brown told B.A. at 1:22 p.m. on November 15, 2020, that she was "finna get ate." At 6:55 p.m. the same day, he sent her another message in which he stated, "I wanna eat you again tbh," to which B.A. replied, three minutes later, "Come eat yo pusse den daddy." All three messages generally refer to Brown's causing B.A.'s sexual organ to contact his mouth. On November 19, 2020, Brown told B.A., "Today ima get you pregnant," requiring penis-vagina contact.

The trial court admitted into evidence photographs from Brown's cell phone video that included showing Brown's hand on B.A.'s breast and Brown's putting his penis against B.A.'s lips. The photographs and Instagram messages, as well as the forensic nurse's testimony, corroborate B.A.'s testimony, demonstrate specific instances of conduct, and strongly weigh against a finding that Brown was harmed. *See id.* at 777–78.

19

### 3. Arguments of counsel

During closing arguments, the prosecutor argued that there were photographs of the sexual assault in Count 3 (Brown's sexual organ contacting B.A.'s mouth) and indecency in Count 5 (causing B.A. to touch any part of Brown's genitals),[17] and indecency in Count 6 (Brown's touching B.A.'s breast), and she directed the jurors that if they had "any question about that or any doubt, watch the video, look at the photos again." She stated that B.A. had testified about the sexual assaults in Count 1 (Brown's contacting B.A.'s female sexual organ with his penis) and Count 2 (Brown's contacting B.A.'s female sexual organ with his mouth) and about the indecency in Count 4 (Brown's touching any part of B.A.'s genitals) and that the forensic nurse had corroborated B.A.'s testimony about these offenses. The prosecutor also told the jury, "[I]f you have any question about the nature of their relationship, go back to the Instagram messages. They're in gruesome detail about what [Brown] and [B.A.] did every time they met up during their relationship." She reemphasized the Instagram messages during her rebuttal and reminded the jury that the on-or-about date was a random date to cover the ongoing sexual abuse.

Brown's theory at trial was that B.A. was a liar. He also directed the jury to the extraneous-offense instruction in the charge and cautioned the jury not to hurry through the six counts in cause number 1686716D.

---

[17]We think the prosecutor may have misspoken, intending to refer to one of the Instagram messages that referenced B.A.'s touching Brown's genitals.

Neither the prosecutor nor the defense attorney addressed unanimity during closing arguments. The prosecutor's directing the jury to pieces of tangible evidence showing specific instances of conduct and B.A.'s testimony that supported each of the counts weighs against harm.

### 4. Brown's appellate arguments and comparable cases

Brown argues that the sexual-assault indictments as to B.A. "claimed almost exactly the same thing," that the evidence was described in very general terms, and that the jury charge did not require the jurors to agree "on which of the many instances of vaginal intercourse or oral sex occurred" and instead contained only a general statement about unanimity. Brown further argues that there was too little evidence for the jurors to isolate one allegation and agree on it during their twenty-nine minutes of deliberations.

Brown refers us to *Rodriguez v. State*, a similar case in which we found unpreserved charge error. No. 02-18-00057-CR, 2019 WL 406167, at *3–4 (Tex. App.—Fort Worth Jan. 31, 2019, no pet.) (mem. op., not designated for publication). In *Rodriguez*, the appellant was found guilty of two counts of aggravated sexual assault of a child and one count of sexual assault of a child. *Id.* at *1. The jury charge contained only a general unanimity instruction that failed to alert the jurors that they needed to be unanimous about which incident formed the basis of each of the aggravated-sexual-assault-of-a-child counts, which were only distinguishable from each other by the alleged on-or-about date. *Id.* at *3–4. We concluded that this was

error because the evidence showed that there were multiple instances of aggravated sexual assault occurring on unspecified dates, allowing for the possibility of nonunanimous verdicts. *Id.* at *3, *5.

But although we found unpreserved charge error, we nonetheless concluded that no egregious harm was caused by it because the evidence reflected a detailed first incident and almost-daily incidents thereafter, presenting no remotely significant risk of a nonunanimous verdict. *Id.* at *1, *3. That is, the jury was free to conclude that one count pertained to the first incident and that the second count pertained to the consolidated account of the sexual assaults that occurred every day after the first incident. *Id.* at *6. Brown argues that, unlike in *Rodriguez*, the jurors in this case "had no meaningful way to distinguish the allegations concerning B.A." As set out in our analysis below, we disagree.

## 5. Analysis

As pointed out by the prosecutor during her closing argument, the photograph of B.A.'s mouth contacting Brown's penis proved Count 3, that Brown had intentionally or knowingly caused his sexual organ to contact B.A.'s mouth, and the photograph of Brown's grasping B.A.'s breast proved Count 6, that Brown had engaged in indecency by sexual contact by touching any part of B.A.'s breast. The Instagram messages exchanged between B.A. and Brown established Count 1, a specific incident of penetration of her female sexual organ with his penis, established Count 2, a specific incident of his contacting her female sexual organ with his mouth,

22

and established Count 5, a specific incident of Brown's having B.A. touch his genitals. Although B.A. testified about multiple occasions of sexual contact with Brown, these tangible items from their cell phones granted her testimony sufficient credibility to allow the jury to decide Brown's guilt for these offenses, as well as Count 4, regarding Brown's touching B.A.'s genitals, supported by the forensic nurse's testimony, in less than half an hour. Because the charge alone is the only indication of harm, and only theoretical harm at that, we conclude that the trial court's failure to include a specific unanimity instruction did not result in actual harm, and we overrule Brown's first and second issues.

## D. Brown's juror-information argument

In his final issue, Brown argues that the trial court erred by granting the State's motion to release personal juror information, referring us to *Onick v. State*, No. 02-18-00356-CR, 2019 WL 1950063 (Tex. App.—Fort Worth May 2, 2019, no pet.) (mem. op., not designated for publication), and *Johnson v. State*, No. 02-19-00194-CR, 2020 WL 1057309 (Tex. App.—Fort Worth Mar. 5, 2020, no pet.) (mem. op., not designated for publication). The State concedes that the trial court erred by granting the motion but argues that Brown cannot show any harm because the verdict was not affected.

Texas Code of Criminal Procedure Article 35.29(b) provides, in pertinent part, that "[o]n application by a party in the trial . . . to the court for the disclosure of

23

information described in Subsection (a),[18] the court shall, on a showing of good cause, permit disclosure of the information sought." Tex. Code Crim. Proc. Ann. art. 35.29(b); *see Hooker v. State*, 932 S.W.2d 712, 716 (Tex. App.—Beaumont 1996, no pet.) (observing that a showing of "good cause" generally must be based upon sworn testimony or other sufficient supportive evidence in the record).

The State's motion, which was not verified, merely recites that "[g]ood cause exists for the request of this information in that the State intends to use this information for the legitimate purpose of sending out jury letters to inform Jurors of possible post-trial remedies and their rights concerning those remedies." We stated in *Onick* that a similar motion did not establish good cause because it was unsworn and unsupported by any evidence and simply asserted without specificity that the State needed the jurors' information to send out letters regarding possible post-trial remedies and associated rights. 2019 WL 1950063, at *6. Because the State's motion here suffers from the same deficiencies as the one in *Onick*, the trial court abused its discretion by granting it. *See id.*; *see also Johnson*, 2020 WL 1057309, at *6–7 (discussing *Onick*). However, as we noted in *Johnson*, as to the same motion, we will not reverse a trial court's judgment for nonconstitutional error unless the error affected the

---

[18]Subsection (a) lists information collected by the court or by a prosecuting attorney during jury selection, including a juror's home address, home telephone number, social security number, and driver's license number. Tex. Code Crim. Proc. Ann. art. 35.29(a).

defendant's substantial rights. 2020 WL 1057309, at *7 (citing Tex. R. App. P. 44.2(b)); *see Onick*, 2019 WL 1950063, at *6.

The record reflects that the jury was sent back to the jury room at the punishment trial's conclusion "for some final instructions" at 12:00 p.m. The signed order granting the State's motion was filed later that day at 1:37 p.m. Nothing in the record suggests that any juror was made aware prior to discharge that the State sought to obtain the jurors' information. *See Johnson*, 2020 WL 1057309, at *7. Further, Brown did not challenge the trial court's order granting the State's motion in his motion for new trial or in his amended motion for new trial. Because nothing in the record before us supports the argument that Brown was harmed when the trial court abused its discretion by granting the State's motion, we overrule his fourth issue.

### III. CONCLUSION

Having overruled Brown's four issues, we affirm the trial court's judgments.

/s/ Dana Womack

Dana Womack
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 27, 2023

25